Raymond HEDLUND, Respondent,

v.

CITIZENS SECURITY MUTUAL IN-
SURANCE COMPANY OF RED
WING, Minnesota, Appellant.

No. CO–85–1202.

Court of Appeals of Minnesota.

Nov. 19, 1985.

Kurt J. Marben, Thief River Falls, for respondent.

George F. Vogel, Red Wing, for appellant.

Heard, considered and decided by CRIPPEN, P.J., WOZNIAK and LANSING, JJ.

## OPINION

WOZNIAK, Judge.

Citizens Security Mutual Insurance Company appeals from a judgment of the district court confirming an arbitration award of underinsured motorist benefits made to the heirs and next of kin of Christine Hedlund. We affirm in part and reverse in part.

## FACTS

Hedlund was killed on June 3, 1984 when a car that she was driving collided with a car driven by Carl A. Flaten, Jr. Hedlund's heirs and next of kin brought suit against Flaten and against Larry Kruse, d/b/a El Ceritos bar. The complaint alleged that Flaten was negligent and that El Ceritos was liable under the Civil Damages Act, Minn.Stat. § 340.95 (1984), for serving Flaten an intoxicating beverage while he was obviously intoxicated.

Hedlund was insured by Citizens. Her policy provided her with uninsured/underinsured motorist coverage in the amount of $300,000. Flaten was insured by the Progressive Casualty Insurance Company. His policy provided him with liability insur-

ance of $25,000. El Ceritos was insured by the Ideal Mutual Insurance Company. Its policy provided it with liability insurance of $100,000.[1]

After the commencement of the civil action, Raymond Hedlund, decedent's husband, made a claim for underinsured motorist benefits against Citizens. The claim was arbitrated before a panel of three arbitrators. The panel determined that both Flaten and Hedlund were negligent and that their negligence was a direct cause of the accident; that 80% of the negligence was attributable to Flaten and 20% to Hedlund; and that Hedlund's heirs sustained damages in the amount of $345,000. The panel made no finding of liability on the part of El Ceritos.

Plaintiff moved the district court for an order confirming the arbitration award pursuant to Minn.Stat. § 572.18 (1984) and for an order of judgment, together with interest, costs, and disbursements. Plaintiff incurred costs in the arbitration proceeding of $1,850.18.

Citizens then moved the court for a modification or correction of the arbitration award pursuant to Minn.Stat. § 572.20 (1984) and for a denial of plaintiff's interest, costs, and disbursements. Citizens requested a deduction of the liability limits of the Progressive Casualty Insurance Company in the amount of $25,000 and a deduction of the liability limits of the Ideal Mutual Insurance Company policy issued to El Ceritos in the amount of $100,000.

The district court entered judgment against Citizens in the amount of $267,850.18. This amount represented the $345,000 total damages reduced by $69,000 for Hedlund's 20% negligence and $10,000 for the no-fault benefits paid to the plaintiff, plus the plaintiff's costs in the amount of $1,850.18. The court did not award the plaintiff any interest on the arbitration award.

1. Ideal Mutual was declared insolvent by an order of the Supreme Court of New York dated December 26, 1984. Appellant states that all claims against Ideal Mutual will be paid pursuant to the Minnesota Insurance Guaranty Association Act, Minn.Stat. ch. 60C (1984). Because we hold that Citizens is not entitled to a deduction of El Ceritos' liability limits, it is unnecessary to discuss the ramifications of Ideal Mutual's insolvency.

Citizens appeals from the judgment of the district court. Plaintiff has filed a notice of review of the denial of its motion for interest on the arbitration award.

### ISSUES

1. Is the underinsurer entitled to a deduction from the award of underinsurance benefits of the $25,000 liability limits of the underinsured motorist?

2. Is the underinsurer entitled to a deduction from the award of underinsurance benefits of the $100,000 liability insurance policy limits on El Ceritos?

3. Did the district court err in awarding the plaintiff his costs and disbursements incurred in arbitration?

4. Did the district court err in refusing to award the plaintiff prejudgment interest from the date of the arbitration award to the date of the confirmation of the award?

### ANALYSIS

#### I.

In *Schmidt v. Clothier*, 338 N.W.2d 256 (Minn.1983), the supreme court held that an underinsurer is liable only for the damages suffered by the insured which are in excess of the liability limits of the defendant. *Id.* at 261; *see also* Case Note, 11 Wm. Mitchell L.Rev. 585, 591 n. 42, 594 n. 49 (1985).

■ Respondent argues that *Schmidt* does not apply in this case because the policy issued by Citizens provides that "We will pay all sums the insured is legally entitled to recover as damages from the owner or driver of an uninsured motor vehicle." The policy defines "uninsured motor vehicle" to include an underinsured vehicle.[2] There is no provision in the policy for a deduction of the tortfeasor's liability insurance policy limits from an award of underinsured benefits.[3]

The supreme court's holding in *Schmidt*, however, was not based on the policy language in that case. In fact, the policy at issue in one of the consolidated actions in *Schmidt* contained an underinsured motorist coverage endorsement similar to that in the Citizens policy at issue here. The *Schmidt* endorsement provided:

We will pay damages which a covered person is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury sustained by a covered person and caused by an accident.

Brief for Respondent Paskoff at A-1, *Schmidt*. There was no specific provision in the *Schmidt* policy for a deduction of the tortfeasor's liability limits from an award of underinsurance benefits. *See* Brief for Respondent Safeco Insurance Co. at A-11 through A-18, *Schmidt*.

The holding in *Schmidt* was based on the public policies underlying the no-fault act and on the nature of underinsured motorist insurance. The court stated that an insured who was settling with an underinsured tortfeasor would have no incentive to

---

2. The policy defines "uninsured motor vehicle" to include:
    a land motor vehicle or trailer:
    &ast;   &ast;   &ast;   &ast;   &ast;   &ast;
    b. For which the sum of all liability bonds or policies at the time of an accident provides at least the amounts required by the applicable law where a covered auto is principally garaged but their limits are less than the limits of this insurance.

3. The policy provides that:
    Any amount payable under this insurance shall be reduced by:
    &ast;   &ast;   &ast;   &ast;   &ast;   &ast;
    b. All sums paid by or for anyone who is legally responsible, including all sums paid under the policy's LIABILITY INSURANCE.

Respondent argues that this provision is applicable here, but that Citizens is not entitled to a deduction of Flaten's liability policy limits because no payments have been made by Flaten to the plaintiff. This provision, however, appears to refer to sums paid under the Citizens policy's liability insurance.
    The policy also contains a provision that:
    If this insurance provides a limit in excess of the amounts required by the applicable law where a covered auto is principally garaged, we will pay only after all liability bonds or policies have been exhausted by judgments or payments.
    This exhaustion clause is clearly void under *Schmidt*, 338 N.W.2d at 260.

obtain the best possible settlement if he was assured of receiving from the underinsurer the "gap" between the settlement offer and the tortfeasor's liability limits. 338 N.W.2d at 261. The court also relied on the statutory mandatory offer provisions in effect when the causes of action in *Schmidt* arose. These provisions required carriers to offer underinsured motorist coverage whereby the insurer agreed "to pay damages the insured is legally entitled to recover on account of a motor vehicle accident but which are *uncompensated because the total damages exceed the residual bodily injury liability limit of the owner of the other vehicle.*" *Id.*; Minn. Stat. § 65B.49, subd. 6(e) (1978) (repealed 1980).

The mandatory offer provisions were no longer in effect at the time this cause of action arose. However, this court has held that the repeal of the mandatory offer provisions did not change the nature of the coverage. *Hoeschen v. South Carolina Insurance Co.*, 349 N.W.2d 833, 838 (Minn. Ct.App.1984), *pet. for rev. granted*, 356 N.W.2d 49 (Minn.1984).

■ The purpose of underinsurance coverage is to protect the injured party from suffering uncompensated injuries as a result of an accident with an inadequately insured tortfeasor. "The focus of underinsurance is, therefore, the amount of damages an insured party suffers for which the tortfeasor is not insured." *Progressive Casualty Co. v. Kraayenbrink*, 370 N.W.2d 455, 461 (Minn.Ct.App.1985), *pet, for rev. denied* (Minn. Sept. 19, 1985). The underinsurer is therefore liable only for the damages suffered in excess of the tortfeasor's liability limits, for it is only in this amount that the tortfeasor is truly "underinsured."

Respondent also argues that the *Schmidt* holding applies only in the context of a settlement by the insured and the

tortfeasor in an amount below the tortfeasor's liability limit. This is not the case. The *Schmidt* holding applies regardless of how much the plaintiff recovers from the defendant by way of lawsuit or settlement. As the supreme court stated:

> We hold that the underinsurer is liable only for the amount of damages suffered by the insured in excess of the liability limits of the defendant. This holding permits the underinsurance claim to be processed immediately, without regard to any eventual settlement, *for the underinsurer's liability depends not on the settlement but rather on the readily ascertainable liability limit of the defendant.*

338 N.W.2d at 261 (emphasis added).

## II.

■ Payment of underinsured motorist benefits is conditioned on the legal liability of the underinsured motorist. Here, the arbitrators apportioned fault solely between Flaten (80%) and Hedlund (20%). There is nothing in the arbitration award to indicate any finding of liability on the part of El Ceritos, or that an illegal sale of intoxicating beverages had occurred. Thus, any liability on the part of El Ceritos or any other party is purely speculative.[4] To require the insured to deduct from an award of underinsured motorist benefits the liability limits of third parties who have not been found liable by the arbitrators would be wholly inconsistent with the purposes of the no-fault act.

## III.

Following the arbitration award, plaintiff's counsel moved the district court for a confirmation of the award pursuant to Minn.Stat. § 572.18. Citizens then moved for a modification or correction of the award pursuant to Minn.Stat. § 572.20. In its order modifying the award, the district court awarded the plaintiff his costs and

---

**4.** Once Citizens pays the full amount of underinsured benefits to Hedlund, it will have a perfected subrogation interest in Hedlund's tort action against El Ceritos and may recover from Hedlund's tort recovery the underinsured benefits it

has paid, to the extent Hedlund would otherwise receive a double recovery. *See Milbank Mutual Insurance Co. v. Kluver*, 302 Minn. 310, 225 N.W.2d 230 (1974); *Fox v. City of Holdingford*, 375 N.W.2d 44 (Minn.Ct.App.1985).

disbursements in the amount of $1850.18, the full amount requested by the plaintiff.

Minn.Stat. § 572.17 (1984) governs the award of expenses incurred in arbitration:

> Unless otherwise provided in the agreement to arbitrate, the arbitrators' expenses and fees, *together with other expenses*, not including counsel fees, incurred in the conduct of the arbitration, shall be paid as provided in the award.

(Emphasis added.)

Minn.Stat. § 572.21 (1984) governs the award of costs and disbursements incurred in the application for an order confirming, modifying, or correcting an arbitration award:

> Upon the granting of an order confirming, modifying or correcting an award, judgment or decree shall be entered in conformity therewith and be enforced as any other judgment or decree. *Costs of the application and of the proceedings subsequent thereto, and disbursements may be awarded by the court.*

(Emphasis added.)

Plaintiff's counsel, in his memorandum in support of his motion to confirm the award, submitted a list of costs and expenses. Citizens argues that these costs should not have been awarded by the court because they were incurred in the arbitration itself and not in the application for confirmation or in "proceedings subsequent thereto." Plaintiff argues that the word "disbursements" in § 572.21 is not limited by the words "of the application and proceedings subsequent thereto."

■ While the language of § 572.21 is not entirely clear, when read in conjunction with § 572.17, governing expenses of arbitration, § 572.21 can reasonably be construed to apply only to costs and disbursements incurred in the application for confirmation, modification, or correction of the award. Section 572.21 does not authorize the district court, upon a motion for confirmation of the award, to award the costs of the arbitration itself. If these costs are not awarded by the arbitrators pursuant to § 572.17, the proper procedure is a motion

for modification or correction of the award pursuant to Minn.Stat. § 572.16 (1984) (change of award by arbitrators).

## IV.

■ The arbitrators in this case did not award the plaintiff prejudgment interest. In *National Indemnity Co. v. Farm Bureau Mutual Insurance Co.*, 348 N.W.2d 748, 752 (Minn.1984), the supreme court held that the arbitration statute does not permit the trial court to award prejudgment interest upon a motion for confirmation of an arbitration award where no interest was awarded by the arbitrators. The court held that the proper procedure would have been to seek modification or correction of the award pursuant to § 572.16. *Id.*

Respondent argues that interest could not have been requested from the arbitration panel because the amount of underinsured benefits to be awarded was unliquidated at the time of the application for arbitration. This argument is without merit. The amount of interest was ascertainable by computation on the date of the arbitration award. If respondents had asked for interest as an item of damage in their application for arbitration, the arbitrators could have awarded interest on the award from the date of the award to the date of payment. Respondent's argument is also beside the point. Here, as in *National Indemnity*, the issue was not properly before the trial court. *See id.*

## DECISION

1. The trial court's decision not to deduct the $25,000 liability limits of the underinsured driver is reversed. The underinsurer is liable only for the insured's damages which exceed the liability limits of the underinsured tortfeasor.

2. The trial court's decision not to allow a deduction of the $100,000 liability limits of El Ceritos, the dram shop defendant, is affirmed.

3. The trial court's award to the plaintiff of his costs incurred in arbitration is reversed.

4. The trial court's decision not to award plaintiff prejudgment interest from the date of the arbitration award to the date of the confirmation of the award is affirmed.

Affirmed in part; reversed in part.