## MILBANK MUTUAL INSURANCE COMPANY v. NORA KLUVER AND OTHERS.

225 N. W. 2d 230.

December 20, 1974—No. 44647.

*Hvass, Weisman & King* and *Frank J. Brixius,* for appellant.
*Nord, Webster & Brennan* and *Richard Baldwin,* for respondent.

Heard before Sheran, C. J., and Kelly, Todd, Yetka, and Scott, JJ., and considered and decided by the court en banc.

KELLY, JUSTICE.

This is an action brought by plaintiff insurance company seeking reimbursement from defendant Nora Kluver, one of its policyholders, for payments made under the uninsured-motorist,

medical payments, and collision coverages of her policy for a share of the policyholder's damages caused by, inter alia, the negligence of an uninsured motorist. Reimbursement was sought out of the proceeds of a settlement made by defendant Kluver and two liquor vendors to discharge the vendors' liability under the Civil Damage Act for damages defendant Kluver sustained as a result of allegedly illegal sales of liquor to the uninsured motorist. The question of law was presented, with the facts stipulated, to the district court. The trial court held that plaintiff is entitled to the proceeds of the settlement to the extent of its advancements to defendant policyholder less reasonable attorneys fees and costs incurred by her in the recovery of that sum, even though she had not been fully compensated for her injuries. We reverse.

On October 22, 1971, defendant Nora Kluver was involved in an automobile accident caused by the negligence of an uninsured motorist. Pursuant to the terms of its policy of insurance with defendant, plaintiff paid her $25,000 under her uninsured-motorist coverage, $500 under her medical-expense coverage, and $800 under her collision coverage. At the time of this settlement, defendant through her counsel notified plaintiff that a dram shop action would be commenced for the balance of her damages; that defendant did not believe that plaintiff had subrogation rights against that balance; and that if plaintiff wished to be represented it would have to maintain an action on its own behalf. At the same time, however, defendant executed a policy release and trust agreement, a medical payments proof of claim, and a sworn statement in proof of loss with respect to damage to her automobile.

Defendant thereafter commenced an action under the Civil Damage Act, Minn. St. 340.95 (Dram Shop Act), for injury to her person and property and, as their guardian, for injury to the means of support of her minor children caused by the alleged sale of intoxicating liquors to the uninsured motorist by the Dundas Corner Bar and the Northfield Municipal Liquor Store. Dundas

agreed to pay its policy limits of $25,000 in settlement of the personal injury claim of defendant Nora Kluver and $6,500 in settlement of the loss-of-means-of-support claim of her minor children. Northfield agreed to pay $10,000 (out of $100,000 policy limits) in settlement of all claims against it. It is stipulated that defendant Kluver sustained damages of $70,000 as a result of this accident.

The only issue in this case is whether an uninsured-motorist insurance carrier is entitled to the proceeds of a settlement made by parties commonly liable with the uninsured motorist, to the extent of its payment to its insured when its insured has not been fully compensated for her injuries.

The crux of this appeal involves Minn. St. 1971, § 65B.22,[1] which required drivers to obtain uninsured-motorist coverage, the operative language of subd. 3 of that section mandating that "[n]o automobile liability * * * policy of insurance * * * shall be delivered or issued for delivery * * * unless coverage is provided therein or supplemental thereto * * * for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles * * *."

Minn. St. 1971, § 170.25, subd. 3,[2] provides in part:

"* * * [E]very such policy * * * is subject * * * to a limit, exclusive of interest and costs, of not less than $10,000 because of bodily injury to or death of one person in any one accident * * *."

Minn. St. 1971, § 65B.22, subd. 6, provides as follows:

"In the event of payment to any person under the coverage required by this section and subject to the terms and conditions of such coverage, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or

---

[1] Repealed by L. 1974, c. 408, § 33, effective January 1, 1975.

[2] Repealed by L. 1974, c. 408, § 33.

judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made, including the proceeds recoverable from the assets of the insolvent insurer."

This provision is also found in the policy release and trust agreement executed by the defendant.

We should not construe the subrogation provision contained in subd. 6 as though it stood alone. If the intent of the legislature was that of providing protection for persons such as defendant Kluver by mandating uninsured-motorist coverage, that intention is thwarted by allowing subrogation in this case. One of the principles of statutory construction commonly referred to is that an absurd or unreasonable result should not be reached. Bremer v. Commr. of Taxation, 246 Minn. 446, 75 N. W. 2d 470 (1956). It would be absurd to permit defendant Kluver to recover double damages and it is just as absurd to permit subrogation in this case where she has not been fully compensated. Subrogation in this case would permit plaintiff insurance company to avoid the statutory obligation imposed by § 65B.22, subd. 3, and the policyholder would be deprived of benefits for which she had paid a premium. Thus, the result contended for by plaintiff would nullify the insuring provision of the statute. Furthermore, under that interpretation, defendant Kluver would be treated worse than she would have been treated had the negligent motorist here been insured even though the possibility that he would not be insured was the basis for the legislative mandate and her purpose for purchasing the insurance.

We conclude that the overall purpose of the uninsured-motorist coverage statute was to provide policyholders such as the defendant in this case recovery for personal injuries but only to the extent necessary to permit the insured to recover his actual loss and not to such an extent that he would recover more than that loss.

Defendant cites several cases favoring her position in this case. In White v. Nationwide Mutual Ins. Co. 361 F. 2d 785 (4 Cir. 1966), plaintiff was injured by a motorist carrying liability insurance with a maximum of $10,000 coverage for one person. Under Virginia law a vehicle was uninsured if covered by less than $15,000 per person. Plaintiff was covered by an uninsured-motorist policy with the required limits of $15,000. Plaintiff obtained a judgment for $22,000 and then brought actions against the "uninsured motorist's" liability carrier and her own uninsured-motorist carrier. The liability carrier paid its policy limits of $10,000, and the trial court ordered the uninsured-motorist carrier to pay the remaining $12,000. The uninsured-motorist carrier tendered $5,000, arguing that its liability was reduced by the amount already received by plaintiff. The statute on which the uninsured-motorist carrier relied, Va. Code Ann. § 38.1-381 (f) (Supp. 1964), read as follows:

"Any insurer paying a claim under the endorsement or provision required by paragraph (b) of this section shall be subrogated to the rights of the insured to whom such claim was paid against the person causing such injury, death or damage to the extent that payment was made * * *."

The issue, as framed by the Court of Appeals, was whether payments made by or on behalf of an uninsured motorist should be applied first to reduce the liability of the insurance carrier, or first to reduce the loss of the injured party. The Court of Appeals held that such payments must first be applied to reduce the loss of the injured party, since no right of subrogation arises until the insured has received *full* satisfaction of his judgment against the uninsured driver. The court was split 2-1, the dissenter stating that "[t]he statute [quoted above] allows Nationwide subrogation 'to the extent that payment was made * * *.' I think it means what it says, and I respectfully dissent." 361 F. 2d 788. The only significant difference between the Virginia statute and ours is Virginia's use of the word "subrogated" to

describe the status of the insurer, as opposed to the express provision in our statute that the insurer is "entitled to the proceeds" of any settlement or judgment against anyone, without specific reference to the principle of subrogation.

In Raitt v. National Grange Mutual Ins. Co. 111 N. H. 397, 285 A. 2d 799 (1971), the statutory and policy provisions were essentially the same as in the instant case. The court determined that the legislature must have intended to confer upon insurers—

"* * * a right of 'subrogation' only as to amounts recovered from the uninsured motorist against whose liability it indemnified its insured; and not the right which the defendant asserts, based upon a literal reading of the section, to set off against the required uninsured motorist coverage up to its dollar limit any sums recovered from any source responsible for the injury including an insured motorist." 111 N. H. 400, 285 A. 2d 802.

In State Farm Mutual Auto. Ins. Co. v. Barnette, 485 S. W. 2d 545 (Tenn. 1972), the uninsured-motorist carrier relied on its policy provision similar to the one in the instant case. The court based its decision in favor of the policyholder on a statute which allowed only such limitations on required uninsured-motorist coverage as were "designed to avoid duplication of insurance and other benefits." Since the damages sustained by the policyholder far exceeded all policy limits, duplication of insurance obviously was not the purpose of the set-off provisions sought to be applied by the carrier.

We are persuaded by the rationale of these cases and by our own analysis of the statute in question that the uninsured-motorist coverage statute should be construed to mean that an uninsured-motorist liability carrier does not have the right to be subrogated to the proceeds of a settlement its policyholder makes with liquor vendors allegedly liable under the Civil Damage Act for illegal sales to the uninsured motorist where the policyholder has not been fully compensated for her injuries.

Subrogation should be permitted to the extent necessary to avoid a double recovery by such a policyholder.

Reversed and remanded for further proceedings not inconsistent with this opinion.