STATE FARM INSURANCE
COMPANIES, Appellant,

v.

Marian GALAJDA and Zurich-American
Insurance Company, Respondents.

No. 81-348.

Supreme Court of Minnesota.

March 12, 1982.

Lommen, Nelson, Sullivan & Cole, Minneapolis, for appellant.

Rider, Bennett, Egan & Arundel and Lewis Remele, Jr., Minneapolis, for respondents.

OTIS, Justice.

Appellant, State Farm Insurance Companies, appeals the trial court's January 6, 1981, order granting defendants-respondents' motion to dismiss State Farm's complaint for failure to state a claim upon which relief can be granted.

One of the respondents, Marian Galajda, is the surviving spouse of Vasil Galajda. On February 18, 1978, Vasil Galajda was struck and killed by a hit-and-run vehicle at or near the intersection of Marshall and 22nd Avenue N.E. in Minneapolis. Marian Galajda and her four minor children survive Vasil Galajda, who was 48 years of age at the time of his death.

The Minneapolis Police Department determined that the car which struck Mr. Galajda was owned by Central Garage, Inc., leased to Doyle Lock Company, and furnished by Doyle to its employee, Rexford John Whited. Criminal charges were brought against Mr. Whited. He maintained that at the time of the hit-and-run incident he was not driving the vehicle in question nor had he given anyone else permission to drive it. Whited was acquitted of the criminal charges. Zurich-American Insurance Company, the other respondent, insured Doyle Lock Company and its employee, Rexford John Whited.

Mrs. Galajda collected $25,000 from each of two insurance policies issued by the appellant for uninsured motorist coverage.[1] In exchange for receipt of the $50,000 from State Farm, Mrs. Galajda signed the company's standard release and trust agreement which, among other things, required that she assign the proceeds of any settlement to State Farm, and that she not make any settlement without State Farm's consent.

---

1. *See* Minn.Stat. § 65B.49, subd. 4 (1980).

After State Farm paid out the uninsured motorist benefits, Mrs. Galajda commenced a wrongful death action against Rexford John Whited, Central Garage, Inc., and Doyle Lock Company. Counsel for appellant associated with Marian Galajda's counsel, Ralph Parker, in prosecution of the wrongful death action. Following the receipt of an answer by Zurich-American's counsel on behalf of all defendants, settlement negotiations commenced.

Counsel for State Farm was unwilling to settle its subrogation claim for less than the $50,000 it had already paid out. Mr. Parker and Mr. Remele (Zurich-American's counsel) continued to negotiate the wrongful death claim, with the ultimate result being the decision to settle the claim of the heirs for $67,500. A release and hold harmless agreement was drafted wherein the settlement was designated as applying to only those rights of the Galajdas against Zurich-American which were not included in State Farm's subrogation rights against Zurich-American. State Farm's subrogation rights were explicitly reserved, and it was agreed that State Farm could be substituted as the named plaintiff in the wrongful death action if it so desired.

There is a factual dispute as to the time at which State Farm received notice of the settlement and its terms. Respondents contend State Farm was made aware of the settlement before it was approved by the district court while appellant states that notice wasn't given until after the settlement was approved. State Farm, however, was aware that a settlement was being negotiated before it was approved.

Appellant State Farm brought the action which is the subject of this appeal following consummation of the settlement between the respondents. Appellant alleged that Zurich-American enticed Mrs. Galajda to violate her release and trust agreement with State Farm. Appellant sought reimbursement of its $50,000 uninsured-motorist payment from Mrs. Galajda's $67,500 settlement with Zurich-American. State Farm argues that its subrogation interest was wrongfully excluded from the settlement reached between the respondents.

The issue presented by this appeal is whether a recipient of uninsured motorist benefits may settle a wrongful death claim separately from the subrogation claim of an uninsured-motorist insurer even though the individual has executed a standard release and trust agreement that purports to prevent the insured from entering into settlements not consented to by the insurer.

This case presents us with an opportunity to extend the reasoning of our holding in *Naig v. Bloomington Sanitation*, 258 N.W.2d 891 (Minn.1977), from workers' compensation-related settlements to no-fault-related settlements. In *Naig*, an injured employee settled certain tort claims not cognizable under the Workers' Compensation Act that he had against a third party. These tort claims were settled separately from the workers' compensation insurer's subrogation claim. The so-called "*Naig* settlement" was approved by this court because the settlement of the tort claims did not prejudice the employer's subrogation rights.

The manner in which the settlement was arrived at in *Naig* was quite similar to the settlement process in this case. The insurance carrier of the third party in *Naig* made a settlement offer which was acceptable to the employee, but unacceptable to the workers' compensation insurer. Consequently, the attorney for the employee notified the compensation insurer that the employee was going to negotiate a settlement of those items not subject to the insurer's subrogation claim. The eventual settlement was approved by the district court at a hearing which was not attended by the employer or its compensation insurer. "The parties agreed that the settlement 'encompasse[d] everything other than the subrogated interest of the compensation carrier.'" *Id.* at 893.

The facts of *Naig*, as recited above, negate appellant's contention that this case is distinguishable on the grounds that appellant did not have an opportunity to explain its position to the district court judge who approved the settlement. In reading the

stipulation of settlement, it would have been impossible for the district court judge not to have been aware of State Farm's subrogation claim. Appellant is mentioned in nearly every paragraph of the stipulation, and on page two it states:

This is intended to cover every claim which Marian Galajda, as trustee for the heirs of Vasil Galajda, has a right to make and to settle on their behalf against Rexford John Whited and Central Garage, Inc. but does not affect those claims to which State Farm Insurance Company claims a right of subrogation.

One difference of possible significance between *Naig* and the present case is the different statute which provides the basis of recovery. In *Naig*, the workers' compensation insurer was seeking reimbursement of payments which the state statute required it to make to an employee injured at work. The settlement between the employee and the third-party tortfeasor purported to compensate the employee for:

pain and suffering, the loss of consortium of Mr. Naig and of Mrs. Naig, the embarrassment, humiliation that has occurred because of the loss to this man of his earning ability, financial problems in the home, the scars that are on his body, and the general disability as opposed to his prior situation.

*Id.* (quoting from testimony of employee's counsel). The *Naig* court pointed out that it was unclear whether claims which might also be compensable by workers' compensa-

tion were encompassed by the settlement. *Id.* at 894. But this court went on to say:

However, a jury would not be limited by the worker's compensation laws and with the admission by the third party that the employee was not being compensated for items of worker's compensation, any payment made was obviously intended to be for the excess over and above any worker's compensation claims.

*Id.* at 895.

In this case, however, it is clear that the settlement encompasses damages which are compensable under the uninsured motorist provision of the No-Fault Act. Such a conclusion can be drawn from a reading of the applicable No-Fault Act sections, which demonstrate that uninsured motorist coverage is designed to compensate for the kind of damages that could have been won in a tort suit against the hit-and-run driver,[2] with the appropriate tort action in the case being a wrongful death action.

It does not help appellant's claim, however, that the settlement impairs its subrogation interest by including damages compensable under uninsured motorist coverage. As this court emphasized in *Milbank Mutual Insurance Co. v. Kluver*, 302 Minn. 310, 315–16, 225 N.W.2d 230, 233 (1974):

[An] uninsured-motorist liability carrier does not have the right to be subrogated to the proceeds of a settlement its policyholder makes with liquor vendors allegedly liable under the Civil Damage Act for illegal sales to the uninsured motorist

---

2. Minn.Stat. § 65B.49, subd. 4 (1980), states that uninsured motorist coverage is "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles *and hit-and-run motor vehicles* because of injury." (Emphasis added.) Under Minn.Stat. § 65B.67, subd. 1 (1980), it is made clear that "[e]very owner of a motor vehicle or motorcycle for which security has not been provided as required by section 65B.48, shall not by the provisions of this chapter be relieved of tort liability arising out of the operation, ownership, maintenance or use of the motor vehicle or motorcycle." Therefore, a commentator has suggested, *see* J. Schwebel, *Minnesota No-Fault Update* (Minn. Trial Lawyers Ass'n CLE 1981), that the uninsured motorist insurer is

liable to pay sums which the insured would be entitled to recover from the owner or operator of an uninsured motor vehicle—namely, tort liability without limitation. *Id.* at 21. *See also, Bynell v. Gambles Ins. Co.*, No. 741816 (Minn. 4th Dist.Ct. Jan. 31, 1978). As a consequence, Marian Galajda's wrongful death action for pecuniary loss may be understood as an action seeking the same type of damages for which the uninsured motorist provision of the statute is designed to allow compensation.

Therefore, when the stipulation of settlement used the *Naig* language and asserted that only those claims not subject to State Farm's right of subrogation were being settled, it could only properly have referred to loss incurred by the Galajdas that exceeded the available uninsured motorist coverage.

*where the policyholder has not been fully compensated for her injuries. Subrogation should be permitted to the extent necessary to avoid a double recovery by such a policyholder.*

(emphasis added).

Where the victim is not fully compensated by uninsured motorist coverage [3] and a subsequent settlement still does not result in overcompensation, the policy of avoiding duplicate recovery, which subrogation is designed to promote, is not violated. *Id.* at 313, 225 N.W.2d at 232–33.

A second policy of this court is furthered by allowing respondents to prevail on this appeal. In the past this court has encouraged creative settlement agreements:

It is not proper or desirable for this court to condone or condemn types of settlement agreements generically. Rather, we must examine them on a case-by-case basis and assess their validity and effect. If there is no secrecy surrounding a settlement, and if it does not act to prejudice the rights of the nonagreeing parties, then we see no general prohibition against such agreements.

*Pacific Indemnity Co. v. Thompson-Yaeger, Ind.,* 260 N.W.2d 548, 558 (Minn.1977). Even though appellant claims that this settlement was secret, the disclosure requirements of *Naig* have been met.

Under the settlement stipulation, appellant's right to pursue its subrogation claim is preserved. Since the situation here is not quite like the subrogation claims in *Naig* and *Kluver,* some further comment seems appropriate.

In its wrongful death subrogation claim appellant State Farm will attempt to prove that Zurich-American's insured's driver, Whited, was the negligent driver of the hit-and-run vehicle. Must State Farm also prove the total wrongful death damages? We think this unnecessary. If Whited is found to be the negligent driver, then Vasil Galajda was not fatally injured by an uninsured motorist, and State Farm has paid

$50,000 that should have been paid by Zurich-American. Mrs. Galajda has, in fact, accepted $117,500 as full compensation for her claim; both Mrs. Galajda and Zurich-American have relied on State Farm's $50,000 to make this complete settlement; and both Mrs. Galajda and Zurich-American acknowledge that State Farm has a subrogation claim. Indeed, Zurich-American in its settlement has agreed to save Mrs. Galajda harmless from any claim by State Farm. In this context, we believe that in the trial of the subrogation claim the amount of the claim, namely $50,000, is established and need not be litigated; the only issues remaining for trial are those of liability. If Whited is found to be the negligent driver of the hit-and-run vehicle then State Farm is entitled to reimbursement from Zurich-American in the amount of $50,000.

Affirmed.

---

**3.** Appellant conceded in its brief that "it was apparent that the damages exceeded appellant's $50,000 payment."