Thomas FLANERY, Respondent,

v.

TOTAL TREE, INC., Appellant.

No. C2-82-988.

Supreme Court of Minnesota.

April 22, 1983.

Chadwick, Johnson & Condon, Mark J. Condon and Wayne D. Tritbough, Minneapolis, for appellant.

Tierney, Norton, Krieser & Helgen, and Howard P. Helgen, Minneapolis, for respondent.

**TODD, Justice.**

The respondent Thomas Flanery suffered personal injuries when his van was struck by one of appellant Total Tree, Incorporated's (Total Tree) trucks which had been stolen by a thief. Flanery brought a negligence action against Total Tree, recovering a judgment of $58,527.17. A large portion of the recovery—$55,277.17—was subject to a subrogation claim by Flanery's insurer, Prudential Property & Casualty Company. Total Tree appeals from an order of the district court denying its motions for partial summary judgment, and judgment n.o.v. or for a new trial. We affirm.

Total Tree is in the business of tree removal. It regularly parked its equipment in the lot at the rear of Jack's Restaurant & Lounge in Burnsville, Minnesota. Jack's is located at the intersection of Highway 35W and County Road 42.

On the night of June 15, 1977, an unknown theif stole Total Tree's seven and one-half ton 1967 Kenworth truck from Jack's parking lot. The thief drove the truck thirty miles north to Fridley where it struck the rear of Thomas Flanery's three-quarter ton van at approximately 12:30 a.m. The thief fled from the scene of the accident. Flanery suffered personal injuries.

Flanery's insurer, Prudential Property and Casualty Company (Prudential) paid him benefits totaling $55,277.17.[1] Prudential reserved its right of subrogation. Prior to trial, Flanery and his wife settled with Total Tree in the amount of $22,500.[2] Flanery retained a personal interest of $3,250 in the action because he was required to reimburse the Railroad Retirement Board for payments made to him. Thus, the case was tried on the stipulated sum of $58,577.17.[3]

Flanery's action against Total Tree was under the theory that they were negligent in leaving a key in the motor vehicle and that it was reasonably foreseeable that a thief would operate it in a negligent manner. See Illinois Farmers Insurance Co. v. Tapemark Co., 273 N.W.2d 630 (Minn.1978); State Farm Mutual Automobile Insurance Co. v. Grain Belt Breweries, Inc., 309 Minn. 376, 245 N.W.2d 186 (1976).

On May 13, 1982, the jury answered in the affirmative the following questions: (1) Was Defendant Total Tree, Inc. negligent as to the care of their vehicle on June 15, 1977; (2) Was that negligence a direct cause of the accident? Judgment was entered in favor of Thomas Flanery. Total Tree's motions for judgment n.o.v. or for a new trial and for summary judgment on the issue of uninsured subrogation were denied. Total Tree appeals from this order and the judgment.

This appeal presents one issue:[4]

Does the Minnesota No-Fault Automobile Act permit subrogation by a reparation obligor upon payment of uninsured motorist insurance benefits to the extent that its insured will achieve a duplicate recovery?

Since we limit our discussion to uninsured motorist benefits, it is important to note that $25,000 of Prudential's subrogation claim was for uninsured motorist benefits paid to its insured. An examination of the No-Fault Act reveals that the legislature did not specifically provide for subrogation when uninsured motorist benefits are paid. See Minn.Stat. § 65B.49, subd. 4 (1982). Total Tree contends that absent such a provision, Prudential lacks any subrogation

---

1. Prudential's payments to Flanery were as follows:

| | |
|---|---|
| Uninsured motorist coverage: | $25,000.00 |
| Collision coverage: | 1,700.00 |
| No-Fault wage loss benefits: | 10,800.00 |
| No-Fault medical benefits: | 17,777.17 |
| Total: | $55,277.17 |

2. This agreement reserved the subrogation rights of Flanery's insurers.

3. This stipulated amount included Flanery's claim of $3,250, plus the $55,277.17 in benefits paid by Prudential.

4. Appellant raises several other issues which we have considered and determined to be without merit.

rights.[5] Prudential argues that its subrogation rights were preserved by the terms of the release Flanery signed with Total Tree.

The No-Fault Act provides for limited rights of subrogation in section 65B.53. Subdivision 6 of that section states that "[n]o reparation obligor shall contract for a right of reimbursement or subrogation greater than or in addition to those permitted by this chapter." Based upon this language, one could conclude that subrogation for payment of uninsured benefits is precluded under the Act. However, an examination of the purposes of the Act compels the opposite conclusion. Clearly, one of the policies of the No-Fault Act is "to provide offsets to avoid duplicate recovery." Minn. Stat. § 65B.42(5) (1982). Absent subrogation, an insured who is fully compensated might achieve a double recovery.

In analyzing the incorporation of uninsured coverage into the No-Fault Act, we stated in *Gudvangen v. Austin Mutual Insurance Co.*, 284 N.W.2d 813 (Minn.1978), *aff'd on rehearing*, 284 N.W.2d 817 (1979), *appeal dismissed*, 444 U.S. 1062, 100 S.Ct. 1002, 62 L.Ed.2d 745 (1980), that:

> [I]n adopting the concept of no-fault insurance into the Minnesota statutes, the legislature intended no change in the law insofar as uninsured motorist insurance protection is concerned. The statutes dealing with uninsured motorist insurance were intended to be incorporated intact.

284 N.W.2d at 817. *See American Motorist Insurance Co. v. Sarvela*, 327 N.W.2d 77, 78 (Minn.1982). Although *Gudvangen* did not specifically address the issue of subrogation, it compels the conclusion that the right to subrogation survived the enactment of the No-Fault Act. The commentators suggest a similar result.

> The insurer apparently will possess full pre-no-fault subrogation and indemnity rights for benefits paid out under uninsured motor vehicle coverage. Uninsured motor vehicle coverage was required pri-

or to the adoption of the Minnesota Act and insurers clearly possessed subrogation and indemnity rights under the prior law. Therefore, because the preexisting uninsured motorist statute merely was incorporated into the Act, the insurers' subrogation and indemnity rights under the preexisting statute apparently remain intact.

*Subrogation and Indemnity Rights under the Minnesota No-Fault Automobile Insurance Act*, 4 Wm. Mitchell L.Rev. 119, 146 (1978) (footnote omitted).

More recently Professor Michael Steenson stated:

> Although *Gudvangen* did not specifically involve the subrogation issue, it did illustrate the problems created by the juxtaposition of the old uninsured motorist law and the Act. *Gudvangen* strengthens the inference that omission of the subrogation provision from the Act was simply an oversight.
>
> The necessity of using subrogation to eliminate double recovery previously was recognized by the supreme court in the context of an uninsured motorist subrogation claim. The intent to eliminate double recovery is specifically recognized in the Act. The only way to avoid double recovery in uninsured motorist insurance cases is to infer a legislative intent to allow subrogation upon the payment of uninsured motorist insurance benefits.

Steenson, *A Primer on Minnesota No-Fault Automobile Insurance*, 7 Wm. Mitchell L.Rev. 313, 395–96 (1981) (footnotes omitted).

A legislative intent to permit uninsured motorist subrogation may be inferred through the principles of statutory construction:

> The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature.
>
> \*    \*    \*    \*    \*    \*

to its insured.

---

**5.** Total Tree does not dispute Prudential's right to subrogation for the remaining benefits paid

When the words of a law are not explicit, the intention of the legislature may be ascertained by considering, among other matters:

(1) The occasion and necessity for the law;

\* \* \* \* \* \*

(3) The mischief to be remedied;

(4) The object to be attained;

(5) the former law, if any, including other laws upon the same or similar subjects;

\* \* \* \* \* \*

Minn.Stat. § 645.16 (1982). Relying upon these principles, we conclude that a legislative intent exists to permit subrogation for uninsured motorist benefits. A reparation obligor's right to subrogation for payment of uninsured motorist benefits existed before the enactment of the No-Fault Act. Act of May 24, 1967, ch. 837, § 4, 1967 Minn.Laws 1735, 1736, *repealed by* Act of April 11, 1974, ch. 408, § 33, 1974 Minn. Laws 762, 786. *See Milbank Mutual Insurance Co. v. Kluver,*[6] 302 Minn. 310, 313–15, 225 N.W.2d 230, 232–33 (1974) (right of uninsured motorist insurer to subrogation exists to extent insured will achieve a double recovery). Since we find its existence necessary to effectuate the purposes of the No-Fault Act, we hold that a reparation obligor has a right to subrogation upon payment of uninsured motorist benefits to the extent that the insured will achieve a duplicate recovery. *See* Minn.Stat. § 65B.53, subd. 3 (1982); *Langenberger v. Dahl,* 329 N.W.2d 69 (Minn.1983); *Pfeffer v. State Automobile & Casualty Underwriters Insurance Co.,* 292 N.W.2d 743 (Minn. 1980); *Milbank Mutual Insurance Co. v. Kluver,* 302 Minn. 310, 225 N.W.2d 230 (1974).

We affirm the decision of the trial court in all respects.

**6.** The validity of *Kluver* was recently recognized in *State Farm Insurance Cos. v. Galajda,* 316 N.W.2d 564, 567–8 (Minn.1982). *See* M.

Steenson, Minnesota No-Fault Automobile Insurance, at 139–40 (1982).