**ILLINOIS FARMERS INSURANCE CO., Respondent,**

v.

**Oliver B. WRIGHT, Appellant.**

**No. C7-85-872.**

Court of Appeals of Minnesota.

Nov. 19, 1985.

Review Granted Jan. 23, 1986.

Eric J. Magnusen, Lewis A. Remele, Jr., Jeremiah P. Gallivan, Rider, Bennett, Egan & Arundel, Minneapolis, for respondent.

Marlene R. Tschida, Gislason & Martin, P.A., Edina, for appellant.

Heard, considered and decided by LANSING, P.J., and RANDALL and CRIPPEN, JJ.

## OPINION

LANSING, Judge.

Delores Williams received $50,000 in uninsured motorist benefits from her automobile insurer, Illinois Farmers, for injuries sustained in an accident involving appellant Oliver Wright and an unidentified vehicle. Williams sued Wright and settled with him shortly before trial. Illinois Farmers intervened to assert a subrogation claim against Wright and moved for summary judgment on the issue of damages. The trial court granted the motion, ruling that Illinois Farmers' damages were $50,000 as a matter of law. Wright appeals, contending he has a right to litigate the amount of damages. We reverse and remand for trial.

## FACTS

In April 1980 Delores Williams was stopped in traffic at a metered entrance to Interstate Highway 494 in Bloomington. Oliver Wright, while attempting to merge onto the highway, struck the rear end of the automobile directly behind Williams, pushing it into Williams' car. She sustained injuries to her head and neck, and she brought suit against Wright in July 1982.

Wright later claimed in a deposition that an unidentified van moved into his lane, forcing him into the collision. Williams then made a claim for uninsured motorist benefits against her insurer, Illinois Farmers. An arbitration panel found her damages to be $60,000 and apportioned 99% of the fault to Wright and 1% to the phantom vehicle. Illinois Farmers paid Williams $50,000 in uninsured benefits, the limit of her policy.

Shortly before trial of the main liability action, Williams settled her claim against Wright for $7,500. She signed a release discharging all claims against him, but specifically preserving Illinois Farmers' right

to pursue its subrogation claim for the uninsured benefits paid.

Illinois Farmers moved for partial summary judgment, contending its damages were $50,000 as a matter of law. The trial court granted Illinois Farmers' motion, leaving liability the only issue for trial, and certified the finality of the partial summary judgment under Minn.R.Civ.P. 54.02. The court also granted Wright's motion to substitute Illinois Farmers as the named plaintiff.

### ISSUE

Did the trial court err in ruling that Illinois Farmers' damages were $50,000 as a matter of law?

### ANALYSIS

The trial court relied on *State Farm Insurance Companies v. Galajda*, 316 N.W.2d 564 (Minn.1982), in ruling that by settling with Williams for $7,500, with the knowledge that she had received $50,000 in uninsured benefits, Wright "admitted" that her damages exceeded the $50,000 paid by Illinois Farmers. Thus, the court concluded that Wright was only entitled to litigate liability, because Illinois Farmers' damages were $50,000 as a matter of law.

In *State Farm v. Galajda* a hit-and-run vehicle struck and killed Vasil Galajda. His wife collected $50,000 in uninsured motorist coverage from her automobile insurer, State Farm. In exchange for receiving the benefits, State Farm required her to sign a standard release and trust agreement in which she agreed to assign the proceeds of any settlement to State Farm and to obtain State Farm's consent to any settlement.

Mrs. Galajda then brought a wrongful death action against the owner of the vehicle thought to be involved in the accident. She settled the action for $67,500 and signed a release that explicitly preserved State Farm's subrogation rights for the uninsured motorist benefits paid. State Farm sued Mrs. Galajda and Zurich-American for violating the trust agreement, contending it was entitled to $50,000 of the $67,500 settlement.

The Minnesota Supreme Court held that a recipient of uninsured motorist benefits may settle his or her claim against the tortfeasor, despite having executed a release and trust agreement with a consent-to-settlement clause. *Id.,* 316 N.W.2d at 566–68. The court noted that the release agreement between Mrs. Galajda and Zurich-American preserved State Farm's subrogation claim against Zurich-American. The court then commented:

> In its wrongful death subrogation claim appellant State Farm will attempt to prove that Zurich-American's insured's driver * * * was the negligent driver of the hit-and-run vehicle. *Must State Farm also prove the total wrongful death damages? We think this unnecessary.* If [the insured's employee] is found to be the negligent driver, then Vasil Galajda was not fatally injured by an uninsured motorist, and State Farm has paid $50,000 that should have been paid by Zurich-American. Mrs. Galajda has, in fact, accepted $117,500 as full compensation for her claim; both Mrs. Galajda and Zurich-American have relied on State Farm's $50,000 to make this complete settlement; and both Mrs. Galajda and Zurich-American acknowledge that State Farm has a subrogation claim. Indeed, Zurich-American in its settlement has agreed to save Mrs. Galajda harmless from any claim by State Farm. In this context, we believe that in the trial of the subrogation claim the amount of the claim, namely $50,000, is established and need not be litigated; the only issues remaining for trial are those of liability.

*Id.,* 316 N.W.2d at 568 (emphasis added).

The trial court accepted Illinois Farmers' argument that Wright was similarly precluded from litigating damages. The court's order says:

> The payment by defendant Wright of $7,500 to plaintiff, which is in addition to the $50,000 previously paid by Farmers, constitutes an admission by defendant

Wright and his insurer that plaintiff Williams' damages exceed $50,000. * * *

* * * The $7,500 payment by defendant Wright constitutes a recognition by defendant Wright and his insurer that the [arbitration] award was fair and reasonable as a matter of law.

In addition, the court's memorandum provides:

It is this Court's belief that the Supreme Court's decision not to require the relitigation of damages [in *Galajda*] was based on equity and fundamental principles of fairness. Requiring the subrogating insurer to relitigate damages when the plaintiff has no financial stake in the outcome of the litigation places the subrogating insurer in an impossible situation. When a demand for arbitration is made by the plaintiff, the uninsured motorist insurer must vigorously defend the claim in an arbitration such as in the instant case. The plaintiff and her insurer are placed in adversary roles. To subsequently require the insurer to relitigate the plaintiff's damages when the plaintiff has settled separately with defendant is not equitable, given the prior adversarial relationship existing between the plaintiff and the insurer. [I]n order to insure fundamental fairness, Farmers' motion for partial summary judgment must be granted.

Wright vigorously disputes that he "admitted" anything by settling with Williams. The settlement agreement provides that the parties agreed to "compromise and settle [a] disputed claim." Furthermore, Wright argues that settlements protect the insured from the possibility of an excess judgment. He argues that if settlements are deemed to be admissions, insurance companies will be tempted not to act in the insured's best interests by refusing to settle at all.

Wright also argues that, were *Galajda* the law in every case where the insured collects uninsured motorist benefits and later settles with the tortfeasor, nothing would prevent collusion between the uninsurance carrier and the insured. In other words, the carrier could pay its policy limits to the insured and simply move for summary judgment against the tortfeasor without any proof of damages. Illinois Farmers responds that in this case Williams' damage claim received "full and fair scrutiny" and that Illinois Farmers adequately represented Wright's interests in the arbitration proceeding.

We conclude that *State Farm v. Galajda* does not control this case and that Wright may not be denied his right to litigate the amount of damages in the subrogation action. In *Galajda* the only issue was the identity of the sole tortfeasor; if the insured's employee was found to be the negligent driver, "then Vasil Galajda was not fatally injured by an uninsured motorist, and State Farm has paid $50,000 that should have been paid by Zurich-American." This rationale does not fit a factual situation involving multiple tortfeasors. A settlement with one tortfeasor by means of a *Pierringer* release would in no way preclude the others from litigating damages. Here Illinois Farmers takes the place of the uninsured tortfeasor. We can discern no legal reason why Illinois Farmers' payment of uninsured benefits should preclude Wright from litigating damages, any more than he would be precluded from litigating liability, especially because he remains jointly and severally liable for the damages caused by the phantom vehicle.

The trial court's decision essentially bound Wright to the arbitration award when he was neither a party to the insurance contract providing for arbitration nor a party to the arbitration proceedings. No existing principle of collateral estoppel would justify this result. *See* Pielemeier, *Due Process Limitations on the Application of Collateral Estoppel Against Nonparties to Prior Litigation*, 63 B.U.L.Rev. 383–440 (1983). In general, due process requires an opportunity for each individual litigant subject to deprivation of a property interest to present and contradict evidence on the merits of his claim or defense. *Id.* at 419. Preclusion premised on a finding

of prior "adequate representation" is inconsistent with these principles:

> If a person has not had the opportunity to participate actively in the litigation on the merits, that person simply has not been given the process precedent indicates is due. Rather, if courts permit preclusion based on an after-the-fact finding such as "adequate representation," the nonparty's rights have become subject to the tactical decisions, arguments, presentation and mistakes of another over whom he has no control.

*Id.* at 419–20. A nonparty may be precluded from litigating issues on the basis of estoppel when the nonparty substantially controlled the presentation of the prior action or when the nonparty creates the impression that another party has the authority to litigate the issue. *Id.* at 403–04. Neither situation is present here. The argument that relitigation of damages may be inefficient is not compelling: Procedural due process is not intended to promote efficiency or accommodate all possible interests, but rather to protect the particular interests of the person whose property is about to be taken. *Id.* at 426 (citing *Fuentes v. Shevin,* 407 U.S. 67, 90–91 n. 22, 92 S.Ct. 1983, 1999 n. 22, 32 L.Ed.2d 556 (1972)).

Illinois Farmers also contends that Wright should have intervened in the arbitration to protect its subrogation interest. Standing to participate in arbitration, like the right to demand arbitration, is governed by the terms of the insurance policy.[1] There is no evidence that Williams' policy would have permitted Wright to participate in the arbitration of her uninsured motorist claim. Even if the policy permitted it,

> [t]he law does not impose upon any person absolutely entitled to a hearing the burden of voluntary intervention in a suit to which he is a stranger. * * * Unless duly summoned to appear in a legal proceeding, a person not a privy may rest assured that a judgment recovered therein will not affect his legal rights.

1. *But see* Minn.Stat. § 65B.525, subd. 1 (1984 & Supp.1985), which provides for mandatory arbi-

*Chase National Bank v. City of Norwalk,* 291 U.S. 431, 441, 54 S.Ct. 475, 479, 78 L.Ed. 894 (1934) (quoted in Pielemeier, *supra,* at 423).

In evaluating the parties' due process rights and the fundamental fairness of their positions, we strike a different balance than did the trial court. The adversarial relationship developed between Illinois Farmers and Williams and Williams' lack of a financial stake in the outcome are insufficient reasons to deny Oliver Wright the opportunity to present evidence and argument on the damages for which he may be liable.

### DECISION

The trial court erred in granting summary judgment to Illinois Farmers on the damages issue. Oliver Wright may not be precluded from litigating damages at trial.

Reversed and remanded.

tration of claims in the amount of $5,000 or less.