ILLINOIS FARMERS INSURANCE
CO., Respondent,

v.

Oliver V. WRIGHT, Appellant.

No. C7–85–872.

Supreme Court of Minnesota.

Aug. 8, 1986.

Rehearing Denied Sept. 11, 1986.

Marlene R. Tschida, James T. Martin, Edina, for appellant.

Eric J. Magnuson, Lewis A. Remele, Jr., Mary C. Cade, Minneapolis, for respondent.

WAHL, Justice.

Oliver Wright appeals from an order for partial summary judgment entered in a subrogation action brought by Illinois Farmers Insurance Company to recover $50,000 in uninsured motorist benefits paid to its insured who was injured in a motor vehicle accident with Wright. The trial court granted partial summary judgment, establishing the amount of damages in the subrogation claim at $50,000, on the basis of our decision in *State Farm Insurance Companies v. Galajda*, 316 N.W.2d 564 (Minn.1982). The court of appeals reversed, distinguishing *Galajda* and holding

that Wright could not be precluded from litigating the damages issue. *Illinois Farmers Insurance Co. v. Wright*, 377 N.W.2d 41 (Minn.Ct.App.1985). We reverse the decision of the court of appeals and reinstate the order for partial summary judgment of the trial court.

On April 18, 1980, Delores Jean Williams was stopped in a line of traffic on the entrance ramp leading from Highway 494 to Highway 35W southbound. Oliver Wright exited from Highway 35W southbound onto Highway 494 and attempted to merge, but struck the car in line behind Williams, pushing it into the back end of Williams' car. In a deposition taken when Williams began a personal injury action against Wright, Wright claimed a van had cut across two freeway lanes and into his lane, preventing his merger onto Highway 494 and causing the accident. The van did not stop and has not been identified.

Williams claimed uninsured motorist benefits from her insurer, Illinois Farmers, after learning of the unidentified van. Farmers denied coverage and the claim was arbitrated. Wright did not participate in the arbitration hearing, but his attorney had been advised of the proceeding and permitted Farmers to use an adverse medical examination Wright had obtained in preparing to defend against Williams' personal injury action. Farmers disputed the existence of the van and the extent of Williams' claim of injury and damages at the arbitration hearing. The arbitration panel found that Williams had been injured in the accident and awarded her $60,000 in damages. Negligence in the accident was apportioned in the following percentages: Oliver Wright—99 percent; the unidentified van—1 percent.

Farmers paid Williams $50,000 in benefits, the limit of her uninsured motorist coverage, pursuant to the arbitration award. In return, Williams signed a release and trust agreement in which she agreed to pursue an action against Wright and to hold in trust for Farmers any monies recovered as a result of judgment or settlement. Farmers joined Williams' personal injury action against Wright to pursue its subrogation claim. Shortly thereafter, Williams settled her liability claim with Wright for $7,500. Farmers then moved to have the amount of damages in the subrogation claim that remained established as a matter of law at $50,000. The trial court granted the motion and ordered partial summary judgment entered on the issue of damages.

The issue directly presented in this appeal is whether an insurer must prove the total amount of its insured's damages in a subrogation action against the alleged tortfeasor where, following payment of uninsured motorist benefits, the insured separately settles the liability claim with the alleged tortfeasor and the alleged tortfeasor relied in negotiating the settlement with the insured upon the amount of benefits that had already been paid. The trial court, relying on our decision in *State Farm Insurance Companies v. Galajda*, 316 N.W.2d 564 (Minn.1982), did not require proof of the total amount of the insured's damages. Does *Galadja* control, as the trial court held, or is it distinguishable, as the court of appeals held? Marian Galajda collected $50,000 in uninsured motorist benefits from her insurer, State Farm Insurance Companies, after her husband was killed in a hit-and-run automobile accident. In return, she signed a release and trust agreement that required her to assign the proceeds of any settlement to State Farm and not to make any settlement without the company's consent. *Id.* at 565. When the police identified the driver of the hit-and-run vehicle, Mrs. Galajda brought a wrongful death action against the driver and the owner of the car on behalf of herself and her four minor children. Before trial, Mrs. Galajda settled her liability claim against the driver for $67,500 and signed a settlement agreement that specifically preserved State Farm's subrogation rights. State Farm subsequently brought an action against Mrs. Galajda to recover the $50,000 in uninsured motorist benefits it had paid, arguing that its subrogation interest had been wrongfully excluded from the settlement. *Id.* at 566.

The issue directly presented in *Galajda* was whether a recipient of uninsured motorist benefits could settle a liability claim separately from the subrogation claim of the insurer where the settlement preserved the insurer's subrogation claim, even though the insured had agreed not to enter any settlements not consented to by the insurer. In upholding the settlement, we recognized that subrogation rights are to be permitted "to the extent necessary to avoid a double recovery by ... a policyholder." *Id.* at 568, quoting *Milbank Mutual Insurance Co. v. Kluver*, 302 Minn. 310, 315–16, 225 N.W.2d 230, 233 (1974). We did not find that Mrs. Galajda had been fully compensated by the $50,000 paid in uninsured motorist benefits, nor that she and her children had been overcompensated for their loss even with the additional $67,000. *Id.* When it came to the subrogation claim, however, we indicated that State Farm need not prove the total wrongful death damages:

> In its wrongful death subrogation claim appellant State Farm will attempt to prove * * * [the identity of the] negligent driver of the hit-and-run vehicle. Must State Farm also prove the total wrongful death damages? We think this unnecessary. If [the alleged driver] is found to be the negligent driver, then Vasil Galajda was not fatally injured by an uninsured motorist, and State Farm has paid $50,000 that should have been paid by [the alleged driver's insurer]. Mrs. Galajda has, in fact, accepted $117,500 as full compensation for her claim; both Mrs. Galajda and [the driver's insurer] have relied on State Farm's $50,000 to make this complete settlement; and both Mrs. Galajda and [the driver's insurer] acknowledge that State Farm has a subrogation claim * * * * In this context, we believe that in the trial of the subrogation claim the amount of the claim, namely $50,000, is established and need not be litigated; the only issues remaining for trial are those of liability. If [the alleged driver] is found to be the negligent driver of the hit-and-run vehicle then State Farm is entitled to reimbursement from [the alleged driver's insurer] in the amount of $50,000.

*Id.*

■ The trial court reasoned that fairness in Wright's case dictated, as fairness in *Galajda* had dictated, that the insurer not be required to relitigate the damages issue at trial. The court of appeals disagreed and held that Wright could not be denied his right to litigate the amount of damages in the subrogation action. *Wright*, 377 N.W.2d at 44. The effect of the trial court decision, in the opinion of the court of appeals, would be to bind Wright to the award of damages as determined in the arbitration proceeding between Farmers and its insured. To preclude Wright from litigating damages would violate due process, they stated, and could not be justified by any existing principle of collateral estoppel. *Id.* "In evaluating the parties' due process rights and the fundamental fairness of their positions, we strike a different balance than did the trial court," the court of appeals concluded. *Id.* at 45.

While the results reached by the trial court and the court of appeals differ, the analyses of both courts recognize that the issue raised by this appeal must be resolved on principles of equity and fairness. One such principle, underlying our decision in *Galajda*, is that where a tortfeasor, in negotiating a settlement of a liability claim, relies upon the amount the plaintiff's uninsured motorist insurer has already paid in insurance benefits, the tortfeasor should not be allowed to question the reasonableness of damages in a later subrogation action. It is unfair that a tortfeasor should use the amount paid by the insurer to his or her benefit in settling with the plaintiff, and then refuse to accept that amount as a reasonable damages amount in the subsequent subrogation action. Moreover, the insured has a single, indivisible cause of action for damages for personal injury and those damages are measurable by a single standard regardless whether they are payable by one or more tortfeasors or an insured tortfeasor and an insurer required by its contract with the claimant to pay the

portion otherwise payable by an uninsured tortfeasor. Therefore, a settlement between a claimant and a tortfeasor of the claimant's damages other than those already compensated by the insurer necessarily is based on a recognition that the parties are settling the damages in excess of those already compensated.

The question then becomes whether Wright relied on Farmers' earlier payment of $50,000 when he settled his liability claim with Williams for $7,500. In *Galajda*, we found that both Mrs. Galajda and the tortfeasor's insurer, in settling for $67,000, relied on State Farm's $50,000 payment to Mrs. Galajda to make the full, or at least minimally adequate compensation for the wrongful death claim of a surviving spouse and four minor children. Under the facts of the case now before us, we conclude similar reliance has been shown. The arbitration panel found Williams entitled to $60,000 in general damages, an amount very close to the $57,500 for which she eventually settled with Wright. Farmers vigorously contested Williams' claims at the arbitration proceeding, relying in part on evidence Wright had developed in preparing his own anticipated defense against her claims. The close parallel between the amount of the arbitration award and the settlement, recognizing that the arbitration panel was presented with essentially the same evidence Wright would have presented had Williams' claim gone to trial, clearly indicates that Wright relied in negotiating a settlement of the liability claims upon the $50,000 Farmers had already paid Williams in uninsured motorist benefits. Having so relied, our decision in *Galajda* indicates Wright should not now be allowed to question $50,000 as a reasonable measure of damages in Farmer's subrogation action. Wright's reliance on the arbitration award in negotiating the settlement was a voluntary acknowledgement of the reasonableness of the award, negating any claim now that he was deprived of procedural due process by the trial court decision.[1]

Wright's efforts to distinguish the facts of *Galajda* from the facts of his case fails. It is true that *Galajda* involved a single insured tortfeasor, whereas here it is alleged an unidentified van was involved, raising the possibility of muiltiple responsible drivers. This factual distinction is not meaningful, however, because, under the principle of joint and several liability, even if the van would be found partially responsible for the accident, Wright is liable for the whole of Williams' damages. *See Maday v. Yellow Taxi Company*, 311 N.W.2d 849 (Minn.1981) (joint and several liability applies to an uninsured motorist subrogation action.)[2]

Applying our reasoning in *Galajda*, we hold that an insurer need not prove the total amount of its insured's damages in a subrogation action against an alleged tortfeasor where, following payment of uninsured motorist benefits, the insured separately settles the liability claim with the alleged tortfeasor and the alleged tortfeasor relies in negotiating the settlement with the insured upon the amount of benefits that has already been paid. The decision of the court of appeals is reversed and the order of the trial court for partial summary judgment is reinstated.

Reversed; decision of the trial court reinstated.

SIMONETT, J., took no part in the consideration or decision of this case.

---

1. We do not conclude Wright is bound by the arbitrators' decision on a theory of collateral estoppel. Rather, we find the close parallel between the amount of the arbitration award and the settlement to be evidence from which we may infer reliance.

2. The single-multiple tortfeasor distinction would be meaningful only if it were possible that the uninsured driver, in this case the van would be found 100 percent responsible for the accident. Given the facts of this case, that seems unlikely.