SHARE HEALTH PLAN,
INC., Appellant,

Physicians Health Plan of Minnesota,
Inc., Plaintiff,

v.

Dale J. MARCOTTE, as trustee for the
heirs of Florence I. Marcotte, et
al., Respondents,

Clarissa Veldey, Defendant.

No. C9–92–1301.

Court of Appeals of Minnesota.

Jan. 19, 1993.

Review Denied March 30, 1993.

Lewis A. Remele, Jr., Kevin P. Hickey, Bassford, Heckt, Lockhart, Truesdell & Briggs, P.A., Minneapolis, for appellant.

Michael Fargione, Hauer, Fargione & Love, P.A., Minneapolis, for respondents.

Richard L. Jasperson, Richard L. Jasperson, P.A., St. Paul, for amici curiae Med-Centers Health Plan and Group Health, Inc.

Considered and decided by SCHUMACHER, P.J., and HUSPENI and AMUNDSON, JJ.

## OPINION

HUSPENI, Judge.

Physicians Health Plan of Minnesota ("PHP") and appellant Share Health Plan,

Inc. ("Share"), brought declaratory judgment actions against Clarissa Veldey,[1] a PHP member, and against respondents Dale Marcotte and Mary Mitch, trustees for deceased Share members Florence Marcotte and Robert Mitch. Share sought a determination that it was entitled to enforce subrogation provisions contained in its health plan membership contracts.

The trial court denied Marcotte's summary judgment motion asserting that Share could not bring a contract action against the trustee and heirs of Florence Marcotte in a wrongful death action and that Share, in failing to appeal the order for distribution in the wrongful death action, had waived its claim to subrogation.

The trial court granted respondents' subsequent motion for summary judgment, determining that the heirs of the decedents were entitled to be fully compensated before Share could assert its subrogation claim. Share has appealed. Marcotte and Mitch seek review of the trial court's determination that a contractual right to subrogation exists, and that Share did not waive its right to claim subrogation.

We agree with the trial court's ultimate holding: Share is not entitled to subrogation in this case. We conclude, however, that Share cannot bring a subrogation action against the trustee in a wrongful death action, and we reverse the trial court's contrary ruling. We do not reach the question whether the trustees must be fully compensated before Share can assert its contractual subrogation rights; the contract language does not apply to the trustees. Nor do we reach the issue of whether Share waived its right to claim subrogation.

### FACTS

*Marcotte*

On June 9, 1985, Florence Marcotte was injured when she was struck by a car while walking. She died on June 25, 1989. Between the date of the accident and the date of Florence Marcotte's death, her health insurer, Share, expended approximately $91,000 in medical expenses incurred in treating Marcotte.

Dale Marcotte was appointed trustee for the heirs and next of kin of Florence Marcotte. He reached a settlement of $30,000 with the driver of the vehicle which struck Florence Marcotte. The settlement proceeds were distributed pursuant to an order of the trial court. Share received notice of the hearing on the settlement distribution, appeared at the hearing, and did not move to intervene in the wrongful death action. Share did assert a subrogation claim. However, the trial court did not rule on the subrogation claim as Share was not a party to the wrongful death action.

Share commenced the present declaratory judgment action seeking to recover from the settlement proceeds the medical expenses it paid. Share has stipulated that the $30,000 settlement did not fully compensate the next of kin.

The contract between Share and Florence Marcotte contained the following provision:

By accepting COVERAGE under this CONTRACT, the ENROLLEE AGREES:

 \* \* \* \* \* \*

(b) That SHARE's subrogation rights are the first priority claim against any third party. This means that SHARE shall be reimbursed from any recovery before payment of any other existing claims, including any claim by the ENROLLEE for general damages;

 \* \* \* \* \* \*

(d) That SHARE may, at its option, take any necessary action to preserve its subrogation rights. This includes the right to bring suit in the ENROLLEE's name;

(e) That SHARE may collect from the proceeds of any settlement or judg-

---

1. The trial court granted Veldey's motion for summary judgment, stating that Veldey was entitled to be fully compensated before PHP's sub-rogation claim could be enforced. PHP and Veldey subsequently settled their dispute and are not parties to this appeal.

ment recovered by the ENROLLEE or his or her legal representative, regardless of whether the ENROLLEE has been fully compensated;[2]

### Mitch

Robert Mitch died on May 27, 1989, in a motorcycle accident. He was survived by his mother and his two sisters. Share has asserted a subrogation interest of approximately $14,000 for medical expenses paid in the care of Robert Mitch.

Mary Mitch, who was appointed trustee for the next of kin of her son, settled her wrongful death action against the tortfeasor for $35,000. The trial court, in distributing the settlement proceeds, set aside $14,000 pending resolution of Share's declaratory judgment proceeding. The subrogation language in the contract between Share and Mary Mitch was identical to that in Florence Marcotte's contract.

### ISSUES

1. Did the trial court err in holding Share could pursue its subrogation claim against the trustees of decedents?

2. Did the trial court err in holding Share could not pursue a subrogation claim until its insureds had been fully compensated?

### ANALYSIS

### I. Standard of Review

 On review of a summary judgment, this court must determine whether there are any genuine issues of material fact and whether the trial court correctly applied the law. *Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). In the present case, the facts are undisputed. At issue is the enforceability of a subrogation provision in a health insurance contract. This presents a question of law which this court reviews

2. The language quoted in respondents' brief differs slightly from the language in Share's brief. The differences are inconsequential.

3. Respondent Mitch did not join in this summary judgment motion. However, because the

de novo. *See Iowa Kemper Ins. Co. v. Stone*, 269 N.W.2d 885, 887 (Minn.1978).

### II. Action Against Trustees

In the initial summary judgment motion, respondent Marcotte[3] argued that Share's subrogation rights to the settlement funds ended with Florence Marcotte's death; that as trustee, Marcotte was not a party to the insurance contract between Florence Marcotte and Share and, therefore, Share had no contractual subrogation right. The trial court rejected this argument. However, we find merit in the argument raised by Marcotte in this initial motion and turn first to that issue.

 An insurer asserting a subrogation right "steps into the shoes" of its insured; the insurer possesses no greater rights than its insured possessed. *St. Paul Fire & Marine Ins. Co. v. Perl*, 415 N.W.2d 663, 665 (Minn.1987).

 As a result of the deaths of Florence Marcotte and Robert Mitch, their trustees, respondents here, are authorized by statute to maintain actions against the tortfeasors responsible for their deaths. *See* Minn.Stat. § 573.02, subd. 1 (1988). While there is no dispute that a contractual relationship existed between each decedent and Share, there is also no dispute that no contractual relationship exists between respondent trustees and Share. Nor does the language in the contract upon which Share relies support Share's position that its contractual subrogation rights are enforceable against respondents. The contract provides that Share may collect from the proceeds recovered "by the enrollee or his or her legal representative." Respondents are not the legal representatives of the deceased enrollees; they are, instead, the legal representatives of the decedents' spouse or next of kin.

 Also, while under Minn.Stat. § 573.06 (1988) creditors of the decedent

trial court addressed the issue and because our ruling on this issue is dispositive of both the Marcotte and Mitch cases, we review the issue as it pertains to both respondents.

may seek to recover the debts owed by the decedent from the distributive shares received by the next of kin in a wrongful death action, Share fails to qualify as a creditor of Florence Marcotte or Robert Mitch. Share is a subrogated health insurance carrier, not a creditor.

A creditor is a person to whom a debt is owed by another, the debtor. Black's Law Dictionary 332 (5th ed. 1979). Share's insureds do not owe Share a debt. As a subrogated insurance carrier, Share merely has the right to pursue recovery from third parties who caused injury to its insureds for benefits paid by Share. *See* Mark S. Rhodes, *Couch on Insurance* 2d (Rev.Ed.) § 61:2 (1983).

Share next asserts that the Minnesota Supreme Court has recognized subrogation in wrongful death actions, and cites *State Farm Ins. Cos. v. Galajda,* 316 N.W.2d 564 (Minn.1982) to support this argument. *Galajda,* however, is distinguishable. In *Galajda,* the widow of the deceased insured recovered $50,000 in uninsured motorist benefits from the couple's insurer. *Id.* at 565. In accepting the $50,000 payment, the widow signed the insurer's standard release and trust agreement which required her to assign the proceeds of any settlement with a third party to the insurer, and further required that she not make any settlement without the insurer's consent. *Id.* Thus, a contractual relationship existed not only between the deceased and the insurer, but between the insurer and the person who became the trustee in the wrongful death action.

Share's reliance on *Schmidt v. Clothier,* 338 N.W.2d 256, 263 (Minn.1983), is also misplaced. In *Schmidt,* as in *Galajda,* there was a contractual relationship between the trustee in the wrongful death action and the insurer asserting a right to subrogation. In *Galajda,* the trustee had received uninsured motorist benefits, *Galajda,* 316 N.W.2d at 565; in *Schmidt,* the trustee had received underinsured motorist benefits from the subrogated carrier. *Schmidt,* 338 N.W.2d at 263.

Share also argues that its subrogation interest attached at the time it paid medical expenses, and the subsequent deaths of its insureds cannot eliminate that subrogation interest. However, there is nothing in the wrongful death act that permits a claim by a subrogated insurance carrier that is not a creditor. Unlike *Schmidt* and *Galajda,* there is no contractual relationship between Share and the respondent trustees, as trustees.[4]

■ We agree with Share's argument that one of the primary purposes of subrogation is to prevent a double recovery. *See Rowe v. St. Paul Ramsey Medical Ctr.,* 472 N.W.2d 640, 644 (Minn.1991). We note initially that issues of double recovery are relevant in cases involving equitable subrogation. *See Schmidt,* 338 N.W.2d at 261– 62; *Flanery v. Total Tree, Inc.,* 332 N.W.2d 642, 644 (Minn.1983). Share seeks contractual subrogation in this case. Further, Share has joined in the stipulation which recognizes that the heirs of the decedents have not been fully compensated. Until they have been fully compensated, there clearly cannot be a double recovery.

Finally, Share argues that if the decedents had settled with the tortfeasors prior to death, the next of kin would be bound by that contract and would have no wrongful death claim against the tortfeasor. Share analogizes its subrogation claim to such an agreement and argues that its contract with the decedents should also bind the respondents even though respondents and Share were not parties to a contract. The flaw in Share's argument is that if the decedents had settled with the tortfeasors, the decedents themselves could not have maintained causes of action against the tortfeasors. The trustee can only bring a cause of action that the decedent could have brought. Minn.Stat. § 573.02, subd. 1. There could have been no wrongful death action resulting from the deaths of persons who settled their claims with the tortfeasors.

4. While there is a contractual relationship between Share and Mary Mitch, she is being sued in this case only in her capacity as trustee for the heirs of Robert Mitch.

Although the arguments made by Share are facially appealing, there is no support for them in the wrongful death act. If courts are to recognize contractual subrogation claims raised by health plan providers such as appellant against trustees in a wrongful death action, the legislature must first provide the statutory authority under which such claims may be made.

In view of our determination that Share cannot bring a subrogation action against the trustee in a wrongful death action, we do not reach respondents' argument that Share waived its subrogation rights when it failed to appeal the order for distribution in the wrongful death action.

### III. Subrogation

Our affirmance of the award of summary judgment to respondents rests on the determination that Share may not bring contractual subrogation claims against trustees in a wrongful death action. However, because the trial court based its award of summary judgment to respondents on the theory that the heirs of the deceased are entitled to be fully compensated for their losses before Share may assert its subrogation claim, we shall address the applicability of this alternative basis of relief.

■ As a general rule, equitable considerations apply to all forms of subrogation. *Westendorf by Westendorf v. Stasson*, 330 N.W.2d 699, 703 (Minn.1983). As the court in *Westendorf* explained:

> Given its origins in equity and its restitutionary purpose of preventing unjust enrichment, the general rule is that subrogation, whether arising from equity or contract, will be denied prior to full recovery.

*Id.*

However, in dictum, the *Westendorf* court noted that subrogation will be denied prior to full recovery by the insured *unless explicit contractual terms provide otherwise. Id.* This language has been repeated in other cases. *See, e.g., Regie de l'Assurance Automobile du Quebec v. Jensen*, 389 N.W.2d 537, 539–40 (Minn.App. 1986), *rev'd on other grounds* 399 N.W.2d

85, 92 (Minn.1987); *Pavel v. Norseman Motorcycle Club, Inc.*, 362 N.W.2d 5, 7–8 (Minn.App.1985). *But see Allum v. Med-Center Health Care, Inc.*, 371 N.W.2d 557, 561 (Minn.App.1985) (refusing to allow contractual "first priority claim" where insured was not fully compensated). Other courts have been reluctant to allow contractual modification of the "full recovery rule." *See, e.g., Powell v. Blue Cross & Blue Shield*, 581 So.2d 772, 777 (Ala.1992); *Rimes v. State Farm Mut. Auto. Ins. Co.*, 106 Wis.2d 263, 316 N.W.2d 348, 353 (Wis. 1982).

Share argues that explicit language in its contract meets the *Westendorf* requirements and permits a subrogation claim regardless of whether its insured has been fully compensated. Respondents reply that the subrogation provision in Share's contract is an unenforceable contract of adhesion. *See generally Schlobohm v. Spa Petite, Inc.*, 326 N.W.2d 920, 924–25 (Minn.1982) (discussing elements of adhesion contracts). We recognize the importance of subrogation recoveries to insurers. We also are aware that, while certain groups seeking health insurance coverage through providers like Share may have little bargaining power, other such groups may have considerable strength in the bargaining process. Therefore, we decline to address respondents' allegations absent a specific fact context involving both contracting entities.

Ultimately, we conclude that under the facts of this case, we need not answer the difficult question of whether the language of *Westendorf* would allow Share to pursue a subrogation claim prior to full compensation of its insured. The Share contract provides:

> [t]hat SHARE may collect from the proceeds of any settlement or judgment recovered *by the ENROLLEE or his or her legal representative,* regardless of whether the ENROLLEE has been fully compensated.

(Emphasis added.) In the present case, Share is seeking to recover from the trustees for the heirs of Florence Marcotte and Robert Mitch. Dale Marcotte is neither an

enrollee of Share nor a legal representative of Florence Marcotte. He is the legal representative of Florence Marcotte's heirs. Mary Mitch is the legal representative of the heirs of Robert Mitch. Although Mary Mitch is a Share enrollee, Share paid for services provided to Robert Mitch and is subrogated to the claims of Robert Mitch against the tortfeasor. Mary Mitch has a cause of action against the tortfeasor entirely separate from one which Robert Mitch may have had.

Therefore, even if we were to conclude that the language in the Share contract meets the *Westendorf* requirements, the contract language permits collection from proceeds received either by the enrollee or his or her legal representative. Neither of those entities is present in this case.

## DECISION

Share cannot bring a subrogation action against the trustees for the heirs of Share's insureds' next of kin.

Affirmed in part and reversed in part.