515 F.Supp. 38 (1981)
WESTFIELD INSURANCE COMPANY, Plaintiff,
v.
FARM BUREAU MUTUAL INSURANCE COMPANY, Virgil Blankenship, and Clearview Farms, Inc., Defendants,
FARM BUREAU MUTUAL INSURANCE COMPANY and Clearview Farms, Inc., Third Party Plaintiffs,
v.
P. W. LANIER, Jr., and Lanier, Knox & Olson, Third Party Defendants.
Civ. No. 6-80-456.
United States District Court, D. Minnesota, Sixth Division.
June 8, 1981.
*39 Steven J. Cahill, Cahill Law Office, P.A., Moorhead, Minn., for plaintiff.
Gerald S. Rufer, Rufer, Hefte, Pemberton, Schulze, Sorlie, Sefkow & Kershner, Fergus Falls, Minn., for defendant Farm Bureau Ins. Co. and Clearview Farms.
William D. Yuill, Pancratz, Kruger, Wold, Yuill & Johnson, Fargo, N. D., for defendant Blankenship.
Mart R. Vogel, Vogel, Brantner, Kelly, Knutson, Weir & Bye, Ltd., Fargo, N. D., for P. W. Lanier, and Lanier, Knox & Olson.
DEVITT, Chief Judge.
This suit concerns a claim for subrogation. Plaintiff is an automobile insurer which insured two of Mr. Blankenship's cars. Mr. Blankenship received $60,000, the policy limits on two automobile insurance policies, from plaintiff, his no fault carrier, for injuries arising out of a 1977 automobile accident. Mr. Blankenship also received $250,000 in a settlement with the third party tortfeasor. Plaintiff Westfield Insurance Co. now seeks recovery of some of the money it paid its insured under the subrogation provisions of the Minnesota No Fault Act.
This case is now before the court on defendants' and third party defendants' motion for summary judgment.
Defendants' motion for summary judgment is GRANTED.
Mr. Blankenship was involved in a one car accident with a cow in 1977. He was rendered a quadriplegic as a result of the accident; his wife received less severe injuries. Mr. Blankenship owned two cars; both were insured by Westfield Insurance Co.; the policy limits on each of the insurance policies was $30,000. The cow which Mr. Blankenship hit was owned by Clearview Farms which was insured by Farm Bureau Mutual Insurance Company.
The stipulated losses of the Blankenships, incurred and expected, exclusive of pain and suffering, exceed the total amount they received from the no-fault carrier and the third party tortfeasor. Their losses total $363,852, $189,380 loss of wages, $59,580 medical, $32,700 special equipment and $82,192 attorneys' fees. The Blankenships received $310,000, $60,000 from their no-fault carrier and $250,000 from the third party tortfeasor. The no fault benefits provided partial compensation for medicals and loss of income. The settlement with the third party tortfeasor covered all losses including medicals and loss of income. Plaintiff now seeks recovery of part of the payments it paid its insured in a subrogation claim against its insured, Mr. Blankenship, Clearview Farms and Farm Bureau.
The injured party's claim concerns damages for injuries caused by negligence other than negligence in the maintenance, use or operation of a motor vehicle. The applicable provision governing subrogation is Minn.Stat. § 65B.53, subd. 3 (1980). That section provides that an insurer may be subrogated to a claim based on negligence other than one arising out of the use of a motor vehicle, but that the subrogation claim
exists only to the extent that basic economic loss benefits are paid or payable and only to the extent that recovery on the claim absent subrogation would produce a duplication of benefits or reimbursement of the same loss.

(Emphasis added.) Plaintiff argues that since the settlement between Mr. Blankenship *40 and Farm Bureau included damages for medicals and loss of income, precisely those damages for which it paid under the insurance policy, that Mr. Blankenship received a duplication of benefits and hence plaintiff is entitled to a subrogation claim. Defendants argue that the intent and purpose of Minn.Stat. § 65B.53, subd. 3 is to limit the insurer's right of subrogation to those cases where the insured has been fully compensated for his losses and then only to the extent of the compensation in excess of the losses incurred. This case is one of statutory construction. The narrow issue before the court is the meaning of the "duplication of benefits" language in Minn. Stat. § 65B.53, subd. 3. We hold that the subrogation provision of Section 65B.53, subd. 3 permits subrogation only once, and to the extent that, an injured person is more than fully compensated for his injuries.
Subrogation is an equitable doctrine, the purpose of the doctrine is to avoid unjust enrichment. Garrity v. Rural Mutual Insurance Company, 77 Wisc.2d 537, 253 N.W.2d 512 (1977). The specific subrogation provision here in question must be construed in light of the purposes of the Minnesota No-Fault Automobile Insurance Act. Minn.Stat. § 65B.41 et seq. Pfeffer v. State Automobile & Casualty Underwriters Insurance Co., Minn., 292 N.W.2d 743 (1980). The purposes of the Act are, inter alia, to relieve the economic distress of uncompensated automobile accident victims, and to provide offsets so as to avoid duplicate recovery. Minn.Stat. § 65B.42(1), (2), (5) (1980); Pfeffer, 292 N.W.2d at 747. See also, Note, Subrogation and Indemnity Rights Under the Minnesota No-Fault Automobile Insurance Act, 4 Wm.Mitch.L. Rev. 119, 122 (1978).
In Pfeffer the court, in denying the insurer subrogation, held that the no-fault insurer is not entitled to subrogation until the injured party has been fully compensated for his injury. The court did so on grounds that permitting subrogation on the facts presented there would be inconsistent with the major purpose of the Act  providing full but not over-compensation and secondly permitting subrogation would have denied the policyholder of some of the benefits for which he paid. The relevant facts here are not distinguishable from those in Pfeffer. That case is therefore controlling.
Pfeffer arose under the 1974 statute which permitted subrogation "to the extent of benefits paid or payable" Minn.Stat. § 65B.53, subd. 2 (1974). Plaintiff argues that the Pfeffer holding does not apply here because it arose prior to the 1976 amendment which introduced the "duplication of benefits" language. In doing so plaintiff seeks to distinguish between the meaning of the statutory phrase, duplication of benefits and the holding in Pfeffer permitting subrogation only after the victim has been fully compensated. A careful reading of Pfeffer and the Act indicate otherwise.
The court in Pfeffer construed the subrogation provision in light of the stated purposes of the Act. One of the stated purposes considered by the court was "to provide offsets to avoid duplicate recovery," Pfeffer, 292 N.W.2d 743 at 747 (court's emphasis). Notwithstanding the "duplicate recovery" language  language not substantively different from that with which this court is faced  the court in Pfeffer found the major thrust of the Act "to be to promote full but not over-compensation." Id. Secondly, the court in Pfeffer rejected a narrow statutory construction argument similar to the one plaintiff now urges upon this court. In Pfeffer defendant argued that the "full compensation" standard should not apply to pre-1976 cases as evidenced by the legislative amendment in 1976 which introduced the "duplication of benefits" language and as evidenced by the special subrogation provision applicable to intentional tort or strict liability claims which contained an identical duplication of benefits provision even prior to 1976. The court then, as must this court now, rejected that argument on grounds that "the general purposes behind the [post]-1976 .... Law applicable to this case ... are sufficient to overcome any adverse inference *41 arising from reference to the amendment of the general subrogation statute ... or to the specific reference to "duplicate benefits" contained in the subrogation statute relating to intentional torts." Pfeffer, 292 N.W.2d 743 at 749. Finally, as a matter of equity where either the insurer or the insured must bear the loss, the loss should be borne by the insurer for it is precisely that risk for which it is paid. See Garrity v. Rural Mutual Ins. Co., 77 Wisc.2d 537, 253 N.W.2d 512 (1977).
We find Henning v. Wineman, 306 N.W.2d 550 (Minn. 1981) and other cases arising under the Workers Compensation Act inapposite. Those cases do not mandate an allocation between recoverable and non-recoverable claims nor do they arise under a statute which has the same unique purposes as the No-Fault Act. See, Pfeffer, 292 N.W.2d 743, 747 n.7.
Since plaintiff has no subrogation rights, defendants' motion for summary judgment is GRANTED.