Marlys K. PAVEL, et al., Respondents,

AID Insurance Co., Appellant,

v.

NORSEMAN MOTORCYCLE CLUB,
INC., Respondent.

No. C1-84-1327.

Court of Appeals of Minnesota.

Feb. 5, 1985.

David L. Olson, Edward M. Cohen & Associates, St. Louis Park, for Marlys K. Pavel, et al.

Thomas E. Peterson, Kay Nord Hunt, Lommen, Nelson, Sullivan & Cole, P.A., Minneapolis, for appellant.

Robert G. Haugen, Dean K. Johnson Law Office, Bloomington, for Norseman Motorcycle Club, Inc.

Heard, considered and decided by LESLIE, P.J., and WOZNIAK and LANSING, JJ.

## OPINION

LESLIE, Judge.

Plaintiff Marlys Pavel and her husband Daniel Pavel brought this action against defendant Norseman Motorcycle Club for personal injuries Marlys suffered when

struck by a motorcycle. AID Insurance Company (AID) intervened in plaintiffs' action against defendant, alleging a right of subrogation. Defendant then moved for summary judgment on the issue of intervenor AID's right to subrogation, but did not take a position on the issue. The trial court issued an order on September 23, 1982 dismissing all subrogation claims by AID. AID filed notice of appeal to this court. We reverse.

## FACTS

Plaintiffs Marlys K. Pavel and Daniel R. Pavel carried automobile insurance with AID Insurance Company (AID). Their policy provided personal injury protection (PIP) as follows:

> The company will pay, in accordance with the Minnesota No-Fault Automobile Insurance Act, personal injury protection benefits for
>
> (a) Medical Expenses,
>
> (b) Work Loss,
>
> (c) Essential services expenses,
>
> (d) Funeral Expenses, and
>
> (e) Survivor's Loss,
>
> incurred with respect to bodily injuries sustained by an eligible injured person caused by an accident arising out of the maintenance or use of a motorvehicle (sic) as a vehicle *or through being struck by a motorcycle.*

(Emphasis added.)

On November 10, 1978, Marlys Pavel was struck by a motorcycle while watching a motorcycle race held on defendant Norseman Motorcycle Club's property. Plaintiffs demanded payment of PIP benefits from AID. AID paid plaintiffs $5,220.65 for medical expenses and $3,102.50 for work loss benefits.

Plaintiff later brought this action against defendant alleging it negligently failed to protect spectators of the motorcycle race. AID intervened claiming a right of subrogation to any recovery made by plaintiffs against defendants to the extent of the PIP payments it made to plaintiffs.

## ISSUE

Is an insurance carrier who has paid personal injury protection benefits to its insured for injuries suffered when struck by a motorcycle precluded by the Minnesota No-Fault Act from asserting subrogation rights against a recovery the insured receives from the tortfeasor?

## ANALYSIS

One goal of the Minnesota No-Fault Act is to eliminate partially the fault based system of tort recovery for losses caused in the use of motor vehicles. M. Steenson, *Minnesota No-Fault Automobile Insurance,* 153 (1982). An important method of achieving that goal is limiting a motor vehicle insurer's rights to subrogate. *See* Note, *Subrogation and Indemnity rights under the Minnesota No-Fault Automobile Insurance Act,* 4 Wm. Mitchell L.Rev. 119, 125–31 (1978).

When designing the no-fault act, the legislature specifically excluded certain types of losses from its provisions. By excluding motorcycles from the definition of "motor vehicles," the legislature excluded claims by insureds for losses resulting from the operation of a motorcycle. Minn. Stat. § 65B.43, subd. 2. This provision does not exclude all motorcycle related losses. So long as losses arise out of the insured's use of a motor vehicle—even though a motorcycle was involved—the insured's coverage is governed by the no-fault act. *See Bartel v. New Haven Township,* 323 N.W.2d 806, 808 (Minn.1982).

The way Marlys Pavel suffered her injuries raises a unique question. Her losses did not arise from the use or maintenance of a motor vehicle. Nonetheless her losses were covered under her motor vehicle insurance policy, which provided both PIP coverage under the no-fault act and PIP coverage not governed by the act. To the extent the policy insured plaintiffs for losses caused by being struck by a motorcycle but not arising from the use of a motor vehicle the policy is not governed by the no-fault act. The parties therefore

agree that the benefits paid for losses plaintiffs suffered are not "basic economic loss benefits" under the no-fault act. Benefits paid for such injuries are simply personal injury protection economic loss benefits.[1]

■ Even though AID did not pay no-fault basic economic loss benefits, plaintiffs claim the no-fault act precludes AID's subrogation claim. Section 65B.53, subd. 6 of the act provides that "no reparation obligor shall contract for a right of reimbursement or subrogation greater than or in addition to those permitted by this chapter." Plaintiffs contend the legislature intended § 65B.53, subd. 6 to apply to the benefits AID paid because subrogation for motorcycle related losses is not explicitly allowed by the act. They argue that the legislature explicitly allowed subrogation for property loss benefits—a loss not governed by the no-fault act—and could have similarly allowed subrogation for motorcycle related losses but did not.

After examining this argument in light of the goals of the no-fault act, we reject it and conclude the act does not preclude an insurer's subrogation claim for benefits paid after being struck by a motorcycle. First, by excluding motorcycles from the no-fault act's scope, the legislature retained the fault based character of liability for damages caused by motorcycle use. Since recovery of damages caused by a motorcycle is fault based, one reason for eliminating subrogation rights does not exist. Second, if subrogation is not allowed

the victims of motorcycle accidents who collect PIP benefits from their insurer may gain double recovery if they later successfully prosecute claims against a tortfeasor. Overcompensation violates a purpose of the no-fault act. *See Flanery v. Total Tree, Inc.*, 332 N.W.2d 642, 644 (Minn.1983).

Finally, denying AID's subrogation claim in this case would yield a perverse result. If Marlys Pavel had been negligently struck by a motorcycle while using a motor vehicle, she would have received basic economic loss benefits under the no-fault act. AID would then have an undisputed right to subrogate to the extent permitted under Minn.Stat. § 65B.53, subd. 3 (1982).[2] To interpret the act to preclude subrogation for non-no-fault benefits, when subrogation is permitted for basic economic loss benefits under the act, serves none of the act's goals.

Plaintiffs also argue that AID may subrogate only to the extent they achieve duplicative recovery for their losses. While the no-fault act generally limits subrogation to the amount by which an insured is overcompensated, our holding that the act does not apply means that its limitations also do not apply. Therefore the common law rules on subrogation apply and subrogation will be allowed to the extent permitted in the insurance contract. *Westendorf by Westendorf v. Stasson*, 330 N.W.2d 699, 703 (Minn.1983). Unless the contract explicitly provides otherwise, subrogation will not be allowed by an insurer where "the

1. Since AID paid benefits other than "basic economic loss benefits," the no-fault subrogation rules in several cases cited by the Pavels do not control this issue: *Pfeffer v. State Automobile and Casualty Underwriters Insurance Co.*, 292 N.W.2d 743 (Minn.1980); *Milbradt v. American Legion Post of Mora*, 354 N.W.2d 499 (Minn.Ct. App.1984); *Westfield Insurance Co. v. Farm Bureau Mutual Insurance Co.*, 515 F.Supp. 38 (D.Minn.1981).

2. Minn.Stat. § 65B.53, subd. 3 provides:
A reparation obligor paying or obligated to pay basic economic loss benefits is subrogated to a claim based on * * * negligence other than negligence in the maintenance, use, or operation of a motor vehicle. This right of

subrogation exists only to the extent that basic economic loss benefits are paid or payable and only to the extent that recovery of the claim absent subrogation would produce a duplication of benefits or reimbursement of the same loss.
For example, in *Westfield Insurance Co. v. Farm Bureau Mutual Insurance Co.*, 515 F.Supp. 38, 39–40 (D.Minn.1981) an insured's automobile struck a cow negligently allowed to stray on to a road. Because the insured's loss arose out of the use of a motor vehicle but was not based on negligent use of a motor vehicle, Minn.Stat. § 65B.53 subd. 3 applied to allow subrogation to the extent of a double recovery. Because plaintiff could not achieve double recovery, however, subrogation was not allowed.

insured's total recovery is less than the insured's actual loss." *Id.* at 703.

Since the parties have not asked us to interpret the subrogation provisions in the insurance policy, and the trial court did not reach that question, we will not decide that issue.

### DECISION

Appellant AID Insurance Company is not prevented by the Minnesota No-Fault Act from claiming subrogation under the terms of the insurance policy against respondent Pavels for the PIP benefits it has paid. We reverse the trial court's order granting summary judgment and remand.