**Michele MOHS, individually and as parent and natural guardian of Jessica Mohs, a minor and Jessica Mohs, individually, Respondents,**

v.

**PARRISH'S BAR, Defendant and Third Party Plaintiff, Respondent (C7-87-1668), Appellant (CX-87-1714).**

**BROWN DERBY BAR, Defendant and Third Party Plaintiff, Respondent,**

v.

**KLADEK, INCORPORATED, d.b.a. King of Diamonds Bar, Third Party Defendant, Appellant (C7-87-1668), Respondent (CX-87-1714),**

**and**

**Aetna Casualty and Surety Company, Intervenor, Respondent.**

Nos. C7-87-1668, CX-87-1714.

Supreme Court of Minnesota.

Jan. 29, 1988.

Eric J. Magnuson, Michael D. Tewksbury, Minneapolis, for Kladek, Inc.

Donald G. Clapp, St. Paul, for Parrish's Bar.

Michael B. Bloom, St. Paul, for Brown Derby Bar.

James A. Stein, Lee A. Henderson, Minneapolis, for Aetna Cas. & Sur.

Robert J. Healy, Edina, for Michele Mohs.

## OPINION

AMDAHL, Chief Justice.

We answer a question certified to us pursuant to Rule 103.03(h) Rules of Civil Appellate Procedure. The plaintiffs, minor Jessica Mohs, and her mother as natural guardian, brought suit against the Bars [1] for injuries suffered when Jessica was struck by an automobile driven by Robert Norman Love, an uninsured motorist. The complaint alleges that the Bars illegally served intoxicating beverages to Love while he was obviously intoxicated.

The Mohs family did not own a motor vehicle and there was no policy in effect under which No–Fault benefits could be paid. Jessica thus qualified for benefits through the Minnesota Automobile Assigned Claims Bureau ("MAACB"). Minn. Stat. § 65B.63.65 (1986). Aetna, the respondent in this appeal, was assigned to provide No–Fault benefits to Jessica under the Assigned Claims plan.

Aetna intervened in the dram shop suit, asserting a subrogation right against the Bars for the amounts it paid under the Assigned Claims plan. The Mohs negotiated a minor settlement with the Bars and sought a release of all other claims. Aetna resisted this settlement as it sought to preserve whatever subrogation rights it may have had against the Bars. Consequently, the settlement has not been approved or finalized.

The Bars, relying on *Milbrandt v. American Legion Post of Mora*, 372 N.W.2d 702 (Minn.1985), moved for summary judgment seeking to dismiss Aetna's subrogation claim. The motion was denied, the trial court ruling that *Milbrandt* was distinguishable and therefore not applicable.

---

1. After oral argument, appellant Kladek filed a notice of dismissal from this appeal. On January 22, 1988, the notice of dismissal was approved.

■ The trial court then certified the question presented as important and doubtful. Minn.R.Civ.App.P. 103.03(h). The trial court drafted the question certified as follows:

> Are the subrogation rights, if any, of an insurer paying benefits under the Minnesota Assigned Claims Plan, Minn.Stat. § 65B.63, founded upon the subrogation provisions of the Minnesota No–Fault Automobile Insurance Act, and within the rule of *Milbradt v. American Legion Post of Mora*, 372 N.W.2d 702 (Minn. 1985), or are they based on common law principles, and not subject to the holding in *Milbradt* ? [2]

Because we believe that *Milbrandt* applies to this case, we answer the certified question accordingly and reverse the trial court.

When the No–Fault Act was conceived, it became apparent that certain persons would not be covered under No–Fault. Whether because of age or the lack of car ownership, certain persons would fall through the cracks. *See Mickelson v. American Family Mutual Insurance Co.*, 329 N.W.2d 814, 818 (Minn.1983). Consequently, the legislature created the MAACB as a "gap-closing" device designed to provide these individuals basic economic loss benefits. Minn.Stat. § 65B.63–.65 (1986); *see* Steenson, *A Primer on Minnesota No–Fault Automobile Insurance*, 7 Wm. Mitchell L.Rev. 313, 368 n. 212 (1981); *see also Dahle v. Aetna Casualty and Surety Insurance Co.*, 352 N.W.2d 397, 399 (Minn.1984). The purpose of these gap-closing provisions is to provide innocent non-insureds with at least some protection under the Act.

If a non-insured party, who fits the criteria set forth in Section 65B.64, subdivision 1, files a claim with the MAACB, the claimant is "entitled to basic economic loss benefits because of injury covered by sections 65B.41 to 65B.71 * * *." Minn.Stat. § 65B.64, subd. 1. After a claim is made, the MAACB assigns it to a member insurer. § 65B.63, subd. 2. All costs incurred

by an assigned insurance company in handling a claim "shall be allocated fairly and equitably among * * * " all reparation obligors. *Id.* at subd. 1 (Supp.1987).

■ Neither party disputes that this is an appropriate case for assignment under the MAACB. Nor do they dispute that Aetna was properly assigned the claim, or that Aetna made proper payments. Furthermore, Aetna does not claim that it was not "fairly and adequately" reimbursed by the MAACB for the benefits paid to the Mohs. (Aetna admits in its brief that "[c]laims paid by the servicing carriers are reimbursed by the MAACB."). The only dispute herein concerns Aetna's subrogation rights against the Bars for payments properly made.

Subrogation rights under the plan are governed by Section 65B.64, subdivision 2, which states as follows:

> If a claim qualifies for assignment under subdivsion 1, the assigned claims bureau or *any reparation obligor to whom the claim is assigned shall be, as provided in section 65B.53, subrogated to all of the rights of the claimant against any person*, including another obligor, who is legally obligated to provide economic loss benefits to the claimant, for economic loss benefits provided by the obligor to whom the claim was assigned.

*Id.* (emphasis added). This section's reference to Section 65B.53 incorporates the statutory subrogation rights held by No–Fault insurers generally.

Section 65B.53, subdivision 3, is the subrogation provision that would undisputably apply to this case if Aetna had paid under an actual policy, rather than under the MAACB plan. This section states:

> *A reparation obligor paying* or obligated to pay basic economic loss *benefits is subrogated to a claim based on* an intentional tort, strict or statutory liability, or *negligence other than negligence in the maintenance, use, or operation of a motor vehicle*. This right of subrogation exists only to the extent that basic

---

**2.** While the trial court's spelling of the case name is at odds with the spelling in the Northwest 2d Reporter, official court documents indicate that the correct spelling of the name is "Milbradt."

economic loss benefits are paid or payable and *only to the extent that recovery on the claim absent subrogation would produce a duplication of benefits* or reimbursement of the same loss. *Id.* (emphasis added). Section 65B.53, subdivision 3, was construed in *Milbrandt*, 372 N.W.2d 702, which denied subrogation to the insurer in the factual context presented in this case.

In *Milbrandt*, the insured was injured by a drunk driver. The insurer paid benefits under the policy and sued three bars for subrogation. The bars sought and were granted summary judgment on the subrogation claim.

On appeal, this court held that the insurer had no right to seek subrogation directly from the bars. The court held that subrogation rights under Section 65B.53, subdivision 3 "may be asserted only against the insured." *Id.* at 705. The court further held that such recovery from the insured may only result when the insurer has carried its burden of proving "that the insured has been overcompensated." *Id.*

Milbrandt is factually indistinguishable from the present case. The only legal distinction between the two cases is that *Milbrandt* involved actual payment on a policy while the present case involves an assigned claim. In light of the plain language of Section 65B.64, subdivision 2, which grants the same subrogation rights under the plan "as provided by section 65B.53" this distinction does not affect the application of the rule.

Aetna argues that *Milbrandt* should not apply to this case because of the difference in how it came to pay benefits to the Mohs. It contends that the Mohs were not "insureds," but rather were "claimants" and, therefore, statutory subrogation should not apply. Its primary rationale for this position is that claimants are not insureds, and should be treated differently. However, this rationale ignores the actual language of Section 65B.64, subdivision 2.

Aetna also asserts that since the Mohs paid no premiums to receive coverage, it would be unfair to deny subrogation. This argument has intuitive appeal. Again,

however, the language of the statute cuts against it. First of all, coverage under the plan is mandated to be provided as if the assigned insurance company "had issued a policy of basic economic loss insurance * * *." § 65B.63, subd. 2. Second, as noted, the subrogation provisions have been expressly incorporated. Lastly, contrary to Aetna's implied argument, Aetna will suffer no undue hardship by having no subrogation rights. As provided by statute, and admitted in Aetna's brief, claims paid under the plan are reimbursed by the MAACB. Aetna will only be responsible for its pro-rata share of the benefits paid. This is a cost which Aetna should have taken into account in assessing premiums generally.

This court does not in any way condone dram shop violations, nor does it sanction uninsured motorists. The law should be such as to vigorously discourage such activities. However, this court is not at liberty to rewrite the No–Fault Act to arguably pursue its objectives.

Under the current statute, the subrogation rights of an insurer are governed by the *Milbrandt* doctrine. The statute as currently constituted allows for no other interpretation whether benefits are paid under the MAACB or under a policy of insurance. Consequently, the certified question is answered so that *Milbrandt* will apply to these facts.

Reversed.