## PREFERRED RISK MUTUAL INSURANCE COMPANY,
### Appellant,

v.

## Angela PAGEL, et al., Respondents.

### No. C0-88-2347.

Court of Appeals of Minnesota.

May 16, 1989.

Review Denied July 12, 1989.

Gerald H. Hanratty, Minneapolis, for appellant.

George F. Vogel, Holst, Vogel, Erdmann & Vogel, Red Wing, for respondents.

Heard, considered and decided by SCHUMACHER, P.J., and FOLEY and IRVINE*, JJ.

## OPINION

SCHUMACHER, Judge.

Preferred Risk Mutual Insurance Company (Preferred Risk), a no-fault reparation obligor sued the alleged tortfeasors, respondents, claiming a right of subrogation for uninsured motorist benefits paid. Preferred Risk had paid uninsured motorist benefits to its insured, prior to the present action, that fully compensated her for her injuries. Respondents moved the trial court for summary judgment claiming that a no-fault carrier's subrogation claim for uninsured motorist benefits which have been paid cannot be asserted against the tortfeasor. Respondents alleged that such a claim may only be asserted against a no-fault carrier's own insured who receives a double recovery. The trial court granted summary judgment to respondents. Preferred Risk seeks reversal of summary judgment. We reverse.

## FACTS

On June 22, 1984, Mary Hanson was injured while driving an automobile insured by Preferred Risk. Three vehicles were involved: one driven by Mary Hanson, one driven by Angela Pagel and one driven by Matthew Friendschuh. The Pagel vehicle was insured. The liability insurance carrier for the Friendschuh vehicle was insolvent at the time of the accident making uninsured motorist coverage applicable. *See Fischer v. Farmers Insurance Exchange*, 302 Minn. 153, 224 N.W.2d 136

* Acting as judge of the court of appeals by appointment pursuant to Minn. Const. art. VI, § 2.

(1974). The Friendschuhs were subsequently represented and insured by the Minnesota Insurance Guaranty Association pursuant to Minn.Stat. ch. 60C (1984).

Mary Hanson filed an uninsured motorist claim against her liability carrier, Preferred Risk. Pursuant to an arbitration award, Preferred Risk paid Mary Hanson $35,000 over no-fault benefits already paid. Mary Hanson executed and delivered to Preferred Risk a release and trust agreement.

Mary Hanson sued the alleged tortfeasors, Friendschuh and Pagel. Preferred Risk was not a party to this suit. The defendants moved for summary judgment and a hearing was held September 30, 1987. Preferred Risk made no appearance at this hearing, but subsequently attempted to intervene. Before the intervention took effect, however, the trial court, as a result of the September 30 hearing and by order filed October 6, 1987, confirmed the $35,000 arbitration award. In addition, the trial court found there was no claim to litigate because Mary Hanson had been fully compensated for her total damages by her uninsured motorist carrier, and granted summary judgment to the defendants. The trial court found Preferred Risk was subrogated to Hanson's claim against the uninsured motorist (Friendschuh) and the insured motorist (Pagel).

Preferred Risk then sued the Pagels for the $35,000 uninsured motorist benefits paid to Mary Hanson.[1] The trial court granted Pagels' summary judgment motion finding Minnesota No–Fault law precluded Preferred Risk from bringing a subrogation action directly against the alleged tortfeasors. Preferred Risk appeals and claims a right under Minnesota No–Fault law to recover from the tortfeasor the value of the uninsured motorist benefits paid to its insured.

### ISSUE

Did the trial court err in applying subrogation law under the Minnesota No–Fault Automobile Insurance Act.

### ANALYSIS

On appeal from a grant of summary judgment, it is the function of the appellate court to determine whether any genuine issues of material fact exist and whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium,* 281 N.W.2d 328, 330 (Minn.1979).

Subrogation rights under the Minnesota No–Fault Act present a difficult area. *See Subrogation and Indemnity Rights Under the Minnesota No–Fault Automobile Insurance Act,* 4 Wm. Mitchell L.Rev. 119 (1978). The Act allows limited subrogation rights for recovery of basic economic loss benefits paid under Minn.Stat. § 65B.53, subd. 3 (1988):

> A reparation obligor paying or obligated to pay basic economic loss benefits is subrogated to a claim based on an intentional tort, strict or statutory liability, or negligence other than negligence in the maintenance, use, or operation of a motor vehicle. This right of subrogation exists only to the extent that basic economic loss benefits are paid or payable and only to the extent that recovery on the claim absent subrogation would produce a duplication of benefits or reimbursement of the same loss.

The Minnesota Supreme Court interpreted the meaning of this section in the context of subrogation rights for basic economic loss benefits in dram shop actions. *See Milbrandt v. American Legion Post of Mora,* 372 N.W.2d 702, 705–06 (Minn.1985). The supreme court held that the no-fault carrier's subrogation claim for basic economic loss benefits paid can be asserted only when the insured has received a double recovery, and only against the insured and not directly against the tortfeasor. *Id.* at 705–06. The legislature subsequently prohibited subrogation claims against tortfeasors, e.g., liquor vendors, in civil actions arising under the Liquor Act:

> Subrogation claims denied. There shall be no recovery by any insurance

---

1. Preferred Risk is prohibited by statute from obtaining a subrogation recovery from the Minnesota Insurance Guaranty Association (in-

suring Friendschuhs). *See* Minn.Stat. § 60C.09, subd. 2(2) (1988).

company against any liquor vendor under subrogation clauses of the uninsured, underinsured, collision, or other first party coverages of a motor vehicle insurance policy as a result of payments made by the company to persons who have claims that arise in whole or part under this section. The provisions of section 65B.53, subdivision 3, do not apply to actions under this section.

Minn.Stat. § 340A.801, subd. 4 (1988) (applying to causes of action arising on or after July 1, 1985).

Civil cases arising under the Liquor Act are distinguishable from the instant case.[2] Liability for the improper sale of intoxicating liquors under the Liquor Act, formerly the Civil Damage Act, is purely a creation of statute without counterpart in the common law and cannot be enlarged by construction beyond the meaning given in clear and explicit terms. *Fitzger v. Bloom*, 253 N.W.2d 395, 402 (Minn.1977). The legislature has specifically prohibited subrogation claims against tortfeasors (liquor vendors) under the Liquor Act. *See* Minn.Stat. § 340A.801, subd. 4 (1988).

To the contrary, the legislature has not specifically addressed subrogation rights for uninsured motorist benefits paid for claims arising under the Minnesota No–Fault Automobile Insurance Act. *See Flanery v. Total Tree, Inc.*, 332 N.W.2d 642, 643 (Minn.1983); Minn.Stat. § 65B.53, subd. 3 (limiting subrogation rights for basic economic loss benefits). In *Flanery*, the Minnesota Supreme Court analyzed the incorporation of uninsured coverage into the No–Fault Act stating:

> [I]n adopting the concept of no-fault insurance into the Minnesota statutes, the legislature intended no change in the law insofar as uninsured motorist insurance protection is concerned. The statutes dealing with uninsured motorist insurance were intended to be incorporated intact.

*Id.* at 644 (quoting *Gudvangen v. Austin Mutual Insurance Co.*, 284 N.W.2d 813

(Minn.1978), *aff'd on rehearing*, 284 N.W. 2d 817 (1979), *appeal dismissed*, 444 U.S. 1062, 100 S.Ct. 1002, 62 L.Ed.2d 745 (1980)). The supreme court stated that "[a] reparation obligor's right to subrogation for payment of uninsured motorist benefits existed before the enactment of the No–Fault Act." *Flanery*, 332 N.W.2d at 645 (citing Act of May 24, 1967, ch. 837, § 4, 1967 Minn. Laws 1735, 1736, *repealed by* Act of April 11, 1974, ch. 408, § 33, 1974 Minn. Laws 762, 786). The court concluded that after enactment, "a legislative intent exist[ed] to permit subrogation for uninsured motorist benefits." *Flanery*, 332 N.W.2d at 645. Finding the existence of subrogation rights necessary to eliminate double recovery and effectuate the purposes of the No–Fault Act, the supreme court held "a reparation obligor has a right to subrogation upon payment of uninsured motorist benefits to the extent that the insured will achieve a duplicate recovery." *Id.* In *Flanery*, the supreme court upheld the insurer's right to recover from the tortfeasor the value of uninsured motorist benefits it had paid to its insured. *Id.* We find *Flanery* controlling in this case.

In 1985, the *Flanery* holding was reaffirmed by the supreme court in *State Farm Mutual Automobile Insurance Co. v. Galloway*, 373 N.W.2d 301 (Minn.1985). In a general discussion of subrogation rights under the No–Fault Act, the supreme court held:

> The No–Fault Act does not expressly provide for subrogation rights for an uninsured motorist carrier but we have recognized such a right, provided the claimant has first been made whole. *See, e.g. Maday v. Yellow Taxi Co. of Minneapolis*, 311 N.W.2d 849 (Minn. 1981).

*Id.* at 304 n. 1.

In *Galloway*, the supreme court also generally discussed the procedural alternatives in pursuing subrogation for uninsured motorist benefits. Under circumstances in-

---

2. *See Mohs v. Parrish's Bar*, 418 N.W.2d 494 (Minn.1988); *Milbank Mutual Insurance Co. v. Kluver*, 302 Minn. 310, 315–16, 225 N.W.2d 230, 233 (1974); *Ketterling v. American States Insurance Co.*, 415 N.W.2d 106 (Minn.Ct.App.1988);

*Peters v. B.P. & E., Inc.*, 397 N.W.2d 449 (Minn. Ct.App.1986); *Fox v. City of Holdingford*, 375 N.W.2d 44 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. December 13, 1985).

volving a single tortfeasor, the supreme court stated:

> Rather than try to collect from the uninsured driver, the claimant will ordinarily seek to collect uninsured motorist benefits from her own carrier. The carrier, having paid the benefits, is then subrogated to the claimant's action against the uninsured motorist and attempts to obtain full or partial reimbursement.

*Galloway*, 373 N.W.2d at 304. Under circumstances of multiple tortfeasors, the supreme court stated:

> If claimant receives full compensation in uninsured motorist benefits from her carrier, the carrier is subrogated to claimant's personal injury claim, not only against the uninsured motorist but also against any other insured joint tortfeasors.

*Id.* at 304 (citing *Flanery*, 332 N.W.2d at 642; *Maday v. Yellow Taxi Co. of Minneapolis*, 311 N.W.2d 849 (Minn.1981)).

In a subsequent automobile accident case, the supreme court again upheld an insurer's subrogation action against an alleged tortfeasor following payment of uninsured motorist benefits. *See Illinois Farmers Insurance Co. v. Wright*, 391 N.W.2d 519 (Minn.1986), *reh'g denied*, (Minn. September 11, 1986) (an insurer need not prove the total amount of its insured's damages in a subrogation action against an alleged tortfeasor where, following payment of uninsured motorist benefits, the insured separately settles the liability claim with the alleged tortfeasor and the alleged tortfeasor relies in negotiating the settlement with the insured upon the amount of benefits that has already been paid).

## DECISION

We reverse the trial court's grant of summary judgment and remand for further proceedings consistent with this opinion.

Reversed.