**AMERICAN FAMILY MUTUAL
INSURANCE COMPANY,
Respondent,**

v.

**Robert VANMAN, et al., Appellants.**

No. C8–89–310.

Court of Appeals of Minnesota.

June 27, 1989.

Review Granted Aug. 25, 1989.

* Acting as judge of the Court of Appeals by ap-

Randall G. Spence, Meshbesher, Singer & Spence, Ltd., Minneapolis, for appellants.

James A. Stein, Lee A. Henderson, Hessian, McKasy & Soderberg, P.A., St. Paul, for respondent.

Heard, considered and decided by PARKER, P.J., and KALITOWSKI and THOREEN *, JJ.

OPINION

JOHN F. THOREEN, Judge.

Marcella Sperl, a pedestrian without automobile insurance, was struck and injured by an automobile driven by Robert Vanman, an uninsured motorist. The Minnesota Assigned Claims Plan assigned the pedestrian's claim to American Family Mutual Insurance Company (American Family), which paid basic economic loss benefits. American Family commenced an action against Vanman, alleging a right of subrogation or indemnity for the basic economic loss benefits it had paid. The parties stipulated to entry of judgment in favor of American Family for the amount it had paid for Sperl's medical expenses. This judgment was based on stipulated findings that Vanman was negligent and his negligence the cause of Sperl's injuries. Previously, the trial court had denied Vanman's motion for summary judgment, ruling that American Family had common law subrogation/indemnity rights. The stipulation preserved the defendant's right to appeal. We reverse.

FACTS

On November 9, 1982, Robert Vanman was driving east on Tenth Street near its intersection with Fifth Avenue in downtown Minneapolis. Vanman's vehicle struck Marcella Sperl, a pedestrian who was walking west on Tenth Street. Sperl was taken for treatment to Hennepin County Medical Center, where she incurred $16,-821.44 in medical expenses.

pointment pursuant to Minn. Const. art. VI, § 2.

Vanman's vehicle was uninsured. Sperl was not covered by an insurance policy providing her with basic economic loss benefits. Because neither party had insurance, Sperl applied to the Minnesota Automobile Assigned Claims Bureau for basic economic loss benefits. American Family was assigned Sperl's claim by the plan. American Family paid Sperl's $16,821.44 in medical expenses. American Family subsequently brought an action against Vanman based on subrogation or indemnity to recover the amounts it paid for Sperl's medical expenses.

## ISSUE

Did the trial court err in finding that American Family had a common law right of subrogation/indemnification against Vanman?

## ANALYSIS

■ Whether a common law right of indemnity or subrogation exists under the Minnesota No–Fault Automobile Act is a question of law. When the question on appeal is one of law, the trial court's decision is not binding. *A.J. Chromy Construction Co. v. Commercial Mechanical Services, Inc.,* 260 N.W.2d 579, 582 (Minn. 1977).

Subrogation or indemnification rights under the Minnesota No–Fault Act present a difficult area. *See Preferred Risk Mutual Insurance Co. v. Pagel,* 439 N.W.2d 755 (Minn.Ct.App.1989); *see also* Note, *Subrogation and Indemnity Rights Under the Minnesota No–Fault Automobile Insurance Act,* 4 Wm. Mitchell L.Rev. 119 (1978).

■ Minn.Stat. § 65B.53 (1988) establishes the statutory grounds for indemnity. Subdivision 1 of this section provides for indemnification in cases involving commercial vehicles. In addition, subdivision 2 allows subrogation if the negligence occurred in another state. Finally, subdivision 3 permits subrogation if a claim is based on an intentional tort, strict or statutory liability, or negligence other than negligence in the maintenance, use, or operation of a motor vehicle.

It is clear that none of the statutory bases for subrogation or indemnification is applicable here. Respondent contends that the section is limited to situations where other insurance companies are involved. We disagree. We find the rule enunciated in *Milbrandt v. American Legion Post of Mora,* 372 N.W.2d 702 (Minn.1985) and reiterated in *Mohs v. Parrish's Bar,* 418 N.W.2d 494 (Minn.1988) controlling.

In *Milbrandt,* Brian and Craig Milbrandt were involved in an accident after drinking at several bars. Brian, the driver, was uninsured, but Craig, a passenger, was insured by Mutual Service Insurance Company. When Craig died due to injuries sustained in the accident, Mutual Service paid benefits to his wife. Mutual Service argued that by paying these benefits it became subrogated to the wife's dram shop action against the bars.

The supreme court held:

[S]ection 65B.53, subd. 3, provides the *exclusive subrogation remedy* available to a reparation obligor that pays or is obligated to pay basic economic loss benefits.

*Milbrandt,* 372 N.W.2d at 705 (emphasis added). We find this language compelling and clear. Respondent's attempt to distinguish the case on the grounds that *Milbrandt* involved a premium paying insured versus an uninsured in the present case is not persuasive. The supreme court in *Milbrandt* went to great lengths to establish the reasoning regarding subrogation. The court stated:

Recognition of a separate common law subrogation right would upset the balance struck by the No–Fault Act between fault-based and no-fault systems for the compensation of accident victims. Subrogation rights function in a fault-based compensation system as a means to distribute losses to the party at fault * * *.

*Id.* The court further noted:

[U]nder the No–Fault Act, however, appellant has a duty to pay basic economic loss benefits to its insured without regard to fault. Since the no-fault insurer assesses premiums to pay for injury to

its insured regardless of fault, the insurer is paying out only what its insured paid for, and thus would receive a windfall if allowed to recover from the tortfeasor basic economic loss benefits paid the insured. As the court of appeals correctly noted, subrogation rights, because they are based upon the concept of fault, directly impact upon the operation of a no-fault system. The legislature accommodated the fault and no-fault systems by subordinating the no-fault insurer's subrogation right to its obligation to pay basic economic loss benefits. The extent of subrogation rights to be granted a reparation obligor that pays or is obligated to pay basic economic loss benefits is a matter for the legislature; we decline to recognize the subrogation right urged by appellant under common law.

*Id.* at 705–706. In *Mohs*, the supreme court held that the rule in *Milbrandt*, that subrogation rights under the No–Fault Act are created and governed solely by that Act, applied where, as in the instant case, the insurance carrier pays benefits under the Minnesota Automobile Assigned Claims Bureau.

In *Mohs*, an uninsured motorist allegedly was served drinks at several bars while he was intoxicated. The motorist struck Mohs, a pedestrian who was not covered by insurance which provided basic economic loss benefits. Mohs' daughter made a claim for benefits under the assigned claims plan. Aetna was assigned her claim and paid it. The daughter later brought a dram shop action against the bars. Aetna intervened, asserting a subrogation right against the bars for the amounts it paid to the daughter.

The supreme court held no subrogation right existed. The court reasoned that *Mohs* was factually indistinguishable from *Milbrandt*. Section 65B.64, subdivision 2, provides that an insurer under the assigned claims plan obtains subrogation rights under section 65B.53. Since *Milbrandt* held no common law subrogation rights exist under section 65B.53, subdivision 3, no such rights existed in *Mohs*. Although Mohs paid no premiums, the court further noted that Aetna would suffer no hardship because the plan provided reimbursement to Aetna and because Aetna could recover its pro rata share of such costs through premiums.

Again, American Family's attempt to distinguish this case from *Mohs* is not persuasive. We find the rule enunciated in *Milbrandt* and subsequently followed in *Mohs* to be binding on us.

Respondent cites *Pavel v. Norseman Motorcycle Club*, 362 N.W.2d 5 (Minn.Ct.App. 1985) for the proposition that common law rules on subrogation apply in the present case. However, *Pavel* is distinguishable on its facts. In *Pavel*, the payment of benefits was outside of the No–Fault Act and as such, "the parties * * * agree that the benefits paid for losses plaintiffs suffered are not 'basic economic loss benefits' under the no-fault act." *Id.* at 6–7.

More recently, this court determined that a reparation obligor has a subrogation right under the Minnesota No–Fault Automobile Insurance Act against alleged tortfeasor(s) to recover the value of uninsured motorist benefits paid. *Preferred Risk Mutual Insurance Company v. Pagel*, 439 N.W.2d 755 (Minn.Ct.App.1989). However, this court stated, "the supreme court held that the no-fault carrier's subrogation claim for basic economic loss benefits paid can be asserted only when the assured has received a double recovery, and only against the insured and not directly against the tortfeasor." *Id.* at 756 (citing *Milbrandt*, 372 N.W.2d at 705–06). "The legislature accommodated the fault and no-fault systems by subordinating the no-fault insurer's subrogation right to its obligation to pay basic economic loss benefits." *Milbrandt*, 372 N.W.2d at 706.

Finally, it should be noted that the Legislature, recognizing that under the existing no-fault law there is no right of subrogation for basic economic loss payments made pursuant to the assigned claims plan, has now amended the No–Fault Act specifically to provide for indemnification from the uninsured tortfeasor. *See* 1989 Minn.Laws ch. 58, § 2.

**354**

## DECISION

American Family has no right of subrogation or indemnity against the tortfeasor in this case.

Reversed.

PARKER, Judge (dissenting).

I respectfully dissent and would affirm the trial court's conclusion that denying American Family's common-law cause of action for subrogation or indemnity has the effect of excusing the uninsured tortfeasor from liability for his negligence, contrary to Minn.Stat. § 65B.67.

The rationale behind *Milbrandt* and *Mohs*, denying the insurer a subrogation or indemnity right against the uninsured tortfeasor, is that since premiums were received for the money paid out, to allow recovery would be to allow the insurer a windfall. No such windfall can be indentified here; the claimant has paid no premiums and any recovery goes back to the fund, ultimately to reduce premiums paid by the insured public.

I would hold, under the authority of *Pavel v. Norseman Motorcycle Club*, 362 N.W.2d 5 (Minn.Ct.App.1985), that the legislature has retained the fault-based character of liability for damages caused by an uninsured tortfeasor (and *see* Minn.Stat. § 65B.67). The pedestrian has assigned to American Family her claim against Vanman, who has chosen to be outside the No–Fault Act and should not be allowed to use it as a shield against responsibility for his own negligence. Since a claimant must assign his claim to receive benefits through the Assigned Claim Plan, to deny the assignee a common-law subrogation-indemnity claim is, effectively, to insulate the uninsured from any liability and to reward irresponsibility.