Alexander J. BRAGINSKY,
et al., Appellants,

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Respondent.**

No. C3–00–1096.

Court of Appeals of Minnesota.

April 11, 2001.

Brad C. Eggen, Law Offices of Brad C. Eggen, Minneapolis, (for appellants).

Owen L. Sorenson, Suzanne Wolbeck Kvas, Stringer & Rohleder, Ltd., St. Paul, (for respondent).

Considered and decided by KLAPHAKE, Presiding Judge, AMUNDSON, and WILLIS, Judges.

## OPINION

WILLIS, Judge.

This appeal raises the question of whether the noneconomic-damage thresholds in the Minnesota No–Fault Automobile Insurance Act, Minn.Stat. §§ 65B.41–.71 (2000), apply to an uninsured-motorist action arising from an accident between an insured automobile driver and a negligent, uninsured motorcycle driver. Because we conclude that the thresholds do not apply, we reverse. We affirm the district court's denial of a collateral-source offset, although on a different ground.

## FACTS

Appellant Alexander J. Braginsky sought recovery from his uninsured-motorist (UM) insurer, respondent State Farm Mutual Automobile Insurance Company (State Farm), for damages suffered in an accident with an uninsured motorcycle driver. The accident occurred when the motorcycle collided with Braginsky's automobile and then skidded out of control. The motorcycle driver and his passenger were dragged along the highway under Braginsky's automobile for more than 100 feet. The motorcycle passenger died at the scene; the motorcycle driver was later convicted of gross-misdemeanor driving while under the influence of alcohol. Six weeks after the accident, Braginsky had a heart attack, which he claims was caused by the trauma of the accident.

Braginsky sued State Farm for UM benefits, alleging that he suffered emotional distress and coronary damage as a result of the accident. Liability was not at issue: The motorcycle driver was uninsured, and it is undisputed that his negligence caused the accident. In July 1999, a jury returned a special verdict finding that Braginsky was entitled to damages of $5,000 for pre-verdict pain, suffering, disability, and emotional distress; $3,900 for pre-verdict medical expenses; and $6,300 for future medical expenses. The jury also found that Braginsky sustained no permanent injury or disability as a result of the accident. In its order adopting the jury's special verdict, the district court awarded judgment in favor of State Farm because Braginsky's damages failed to meet any of the thresholds to recovery for noneconomic detriment imposed by Minn.Stat. § 65B.51 (2000), the tort-recovery provision of the Minnesota No–Fault Automobile Insurance Act.

Braginsky moved for amended findings of fact and conclusions of law and other posttrial relief. State Farm moved for determination of collateral sources. The district court determined that Braginsky was entitled to pre-verdict medical expenses, subject to a collateral-source offset, because these damages did not constitute noneconomic detriment. But it rejected Braginsky's arguments that (1) the tort thresholds did not apply to his claim because a motorcycle is not a "motor vehicle" as defined by the no-fault act and (2) the thresholds do not apply to future medical expenses because such expenses do not constitute noneconomic detriment. State Farm again moved for determination of collateral sources; the district court denied the motion on the grounds that Braginsky's out-of-pocket expenses exceeded the award and his health-care insurers had asserted subrogation rights. The district court did not address Braginsky's argument that State Farm's motion for determination of collateral sources was not timely filed.

Braginsky appealed the district court's interpretation and application of the tort thresholds. State Farm filed notice of review as to the court's determination on the collateral-source issue.

## ISSUES

1. Do the no-fault act tort thresholds apply to a plaintiff's UM action against his own insurer for an accident between his automobile and a negligent, uninsured motorcycle driver?

2. Did the district court err in denying the UM insurer's motion for determination of collateral sources?

## ANALYSIS

### 1. No-fault act tort thresholds

■ Whether the no-fault tort thresholds apply to Braginsky's UM action against State Farm requires analysis of the Minnesota No–Fault Automobile Insurance Act, Minn.Stat. §§ 65B.41–.71 (2000). The facts here are undisputed. The district court's application of a statute to undisputed facts is a conclusion of law and is thus fully reviewable by this court. *Johnson v. State Farm Mut. Auto. Ins. Co.*, 574 N.W.2d 468, 470 (Minn.App.1998) (citing *A.J. Chromy Constr. Co. v. Commercial Mech. Servs., Inc.*, 260 N.W.2d 579, 582 (Minn.1977)).

■ Under the no-fault act, damages for noneconomic detriment are recoverable in tort only if certain thresholds are met. These thresholds are set forth in section 65B.51, which provides:

With respect to a cause of action in negligence accruing as a result of injury arising out of the operation, ownership, maintenance or use of a motor vehicle with respect to which security has been provided as required by sections 65B.41 to 65B.71, the court shall deduct from any recovery the value of basic or optional economic loss benefits paid or payable * * *.

\* \* \* \*

In an action described in subdivision 1, no person shall recover damages for noneconomic detriment unless:

(a) The sum of [medical expenses] exceeds $4,000 * * *; or

(b) the injury results in

(1) permanent disfigurement;

(2) permanent injury;

(3) death; or

(4) disability for 60 days or more.

Minn.Stat. § 65B.51, subds. 1, 3. The tort thresholds implement two of the fundamental purposes of the no-fault act: to "prevent the overcompensation of those automobile accident victims suffering minor injuries by restricting the right to recover general damages to cases of serious injury" and to "ease the burden of litigation on the courts of this state." Minn.Stat. § 65B.42, subds. 2, 4. As a trade-off for guaranteed payment, regardless of fault, of specified economic losses for automobile-related injuries, the tort thresholds limit access to the courts to all but those accident victims who are so severely injured that their recovery under the no-fault act would be "so inadequate as to be unjust." *Coughlin v. LaBounty*, 354 N.W.2d 48, 52 (Minn.App.1984), *review denied* (Minn. Jan. 9, 1985).

■■ The tort thresholds apply only to a "cause of action in negligence" accruing "as a result of injury arising out of the operation, ownership, maintenance or use of a motor vehicle," with respect to which "security has been provided as required by [the no-fault act]." Minn.Stat. § 65B.51, subd. 1. The first condition, that the cause of action be in negligence, refers to "both a negligence action and the contract action arising from the same operative facts that is conditioned on the negligence." *Johnson*, 574 N.W.2d at 471. Here, Braginsky's contract action against his insurer arises from the motorcycle driver's negligence.

■ State Farm argues that because Braginsky's claim is against his UM insur-

er and not the uninsured driver, the tort thresholds should apply. Because the thresholds apply only to injuries arising out of the operation, ownership, maintenance, or use of a motor vehicle "with respect to which security has been provided as required by [the no-fault act]," uninsured motorists are not entitled to the limited tort immunity that the thresholds provide. Minn.Stat. § 65B.51, subd. 1; *see also* Theodore J. Smetak et al., *Minnesota Motor Vehicle Insurance Manual* 225 (3rd ed.2000) (noting that uninsured tortfeasors are not entitled to the protection of the thresholds); 2 Michael K. Steenson, *Minnesota No–Fault Automobile Insurance* 282 (2nd ed.1999) (noting that "[t]he quid pro quo for procuring the insurance required by the no-fault act is the limited tort immunity provided by the tort thresholds"). Braginsky's damages arise out of an accident with an uninsured driver, but he seeks recovery from his UM insurer. UM coverage is purchased

> to protect against the risk that the motorist who injures the purchaser is uninsured * * * and unable to pay the damages the purchaser is entitled to recover under tort law.

*McIntosh v. State Farm Mut. Auto. Ins. Co.,* 488 N.W.2d 476, 479 (Minn.1992). The accident victim, in other words, collects under his or her own UM policy the compensation that the defendant's liability carrier would have paid if the defendant had been insured. *Id.* Because the insured accident victim must meet the thresholds when suing an insured defendant, and because the insured's UM insurer takes the place of the absent liability insurer, "it is logical that the insured must

also meet one of the thresholds when suing the UM insurer." *Johnson,* 574 N.W.2d at 471–72.

But Braginsky argues that the thresholds do not apply here because a motorcycle is not a "motor vehicle" as defined by the no-fault act, and thus his cause of action did not accrue "as a result of injury arising out of the operation, ownership, maintenance, or use of a motor vehicle."[1] The no-fault act defines "motor vehicle" as "every vehicle, other than a motorcycle or other vehicle with fewer than four wheels." Minn.Stat. § 65B.43, subd. 2. The supreme court has found this definition to be unambiguous:

> The Legislature precisely defined "motor vehicle" in section 65B.43, subd. 2, and expressly excluded motorcycle from that definition. The statutory definition applies throughout the no-fault act unless the "context clearly indicates a different meaning."

*Feick v. State Farm Mut. Auto. Ins. Co.,* 307 N.W.2d 772, 774 (Minn.1981) (quoting Minn.Stat. § 65B.43, subd. 1 (1980) (stating that words and phrases defined in section 65B.43 shall "have the meanings ascribed to them, except where the context clearly indicates a different meaning")). In *Feick,* the supreme court held that a bicyclist who was injured in a collision with an insured motorcycle driver was not entitled to basic-economic-loss benefits. *Id.* at 775. The bicyclist, who settled for the full amount of the policy limits of the motorcycle driver's liability insurance, then sought to recover basic-economic-loss benefits against policies covering his father's auto-

---

1. Braginsky also argues that his claim is supported by Minn.Stat. § 65B.51, subd. 5, which provides:

   Nothing in this section shall impair or limit tort liability or limit the damages recoverable from any person for negligent acts or omissions other than those committed in the operation, ownership, maintenance, or use of a motor vehicle.

   We find this argument unconvincing. The purpose of this provision is to exclude defen-

dants such as dramshops from the protection afforded by the thresholds. *See* 2 Steenson, *supra,* at 282 (noting that pursuant to subdivision 5, the tort thresholds do not apply "in cases involving civil damage act claims against a dramshop because the dramshop's liability arises out of the illegal sale of intoxicating liquor, not the maintenance or use of a motor vehicle").

mobiles.[2] *Id.* at 773. The no-fault act provides that in an accident causing an injury, basic-economic-loss benefits are available to "every person suffering loss from injury arising out of maintenance or use of a motor vehicle." Minn.Stat. § 65B.46, subd. 1. The court concluded that because basic-economic-loss benefits are available only for injuries arising out of the maintenance or use of a motor vehicle, and because the statutory definition of motor vehicle excludes motorcycles, the bicyclist was not entitled to recover basic-economic-loss benefits against his father's automobile insurer. *Feick,* 307 N.W.2d at 774–75. The court also noted that a negligence claim against the motorcycle driver would similarly "not [be] subject to the [n]o-[f]ault threshold requirements of section 65B.51, subd. 3." *Id.* at 775 n. 8.

State Farm argues that the term "motor vehicle" is ambiguous because the general definitional section of the no-fault act, Minn.Stat. § 65B.43, also contains a definition of "uninsured motor vehicle" that includes motorcycles, and thus that we should interpret the term motor vehicle, as used in section 65B.51, to include motorcycles. Under the no-fault act, UM insurers are required to provide

> coverage for the protection of persons insured under that coverage who are legally entitled to recover damages for bodily injury from owners or operators of *uninsured motor vehicles* and hit-and-run motor vehicles.

Minn.Stat. § 65B.43, subd. 18 (emphasis added). "Uninsured motor vehicle" is defined as "a motor vehicle *or motorcycle* for which a plan of reparation or security [as required by the no-fault act] is not in effect." *Id.,* subd. 16 (emphasis added). Together, subdivisions 16 and 18 of section 65B.43 allow an insured who is injured by an uninsured motorcyclist to collect UM

benefits. After the *Feick* decision, the legislature moved the definition of "uninsured motor vehicle," which includes motorcycles, into the no-fault act's general definitional section; this section also contains the definition of "motor vehicle," which excludes motorcycles. The supreme court has noted that, because of the juxtaposition of these definitions, "the term 'motor vehicle' is not unequivocally explained by Minn.Stat. § 65B.43, subd. 2." *Hanson v. American Family Mut. Ins. Co.,* 417 N.W.2d 94, 95 (Minn.1987). In *Hanson,* the supreme court determined that the no-fault act did not allow an insured to "extend [UM] coverage from an automobile to an owned but uninsured motorcycle." *Id.* at 96. The motorcycle driver in *Hanson* argued that section 65B.49, subdivision 3a(7), which reflects "a broad policy decision to tie [UM] and other coverage to the particular vehicle involved in an accident" rather than to the person, did not apply to motorcycles because that section provides:

> The uninsured and underinsured motorist coverages required by this section do not apply to bodily injury of the insured while occupying a *motor vehicle* owned by the insured, unless the occupied vehicle is an insured motor vehicle.

*Id.* at 95 (quoting 65B.49, subd. 3a(7) (1986)) (emphasis added). The supreme court concluded that, despite the use of the term "motor vehicle" in this provision, the "more inclusive definition of 'uninsured motor vehicle' " should apply because if the legislature had intended to exclude motorcycles from the "broad policy decision" of tying UM and underinsured motorist benefits to the vehicle, it would have "clearly expressed" that intention. *Id.* at 95–96.

■ Unlike section 65B.49, subdivision 3a(7), the provision at issue here, section 65B.51, subdivision 3, makes no reference

**2.** Pursuant to Minn.Stat. § 65B.48, subd. 5, motorcycle owners are required to provide liability insurance covering bodily injury and property damage. Motorcycle owners are not required to provide basic-economic-loss benefits, which cover losses including medical expenses, disability and income loss, funeral and burial expenses, replacement service and loss, survivors' economic loss, and survivors' replacement services loss. Minn.Stat. § 65B.44.

to UM coverage. Further, when the legislature moved the definition of uninsured motor vehicle into the general definitions section of the no-fault act in 1985, it chose not to amend the thresholds section, despite the statement in *Feick* four years earlier that a negligence claim against an insured motorcyclist would not be subject to the thresholds. And unlike *Hanson*, where broad policy considerations weighed against applying the definition of motor vehicle that excluded motorcycles, here they weigh in favor of its application. As we note above, the quid pro quo for procuring the insurance required by the no-fault act is the limited tort immunity provided by the thresholds. But, while every owner of a motorcycle is obligated to provide liability insurance, motorcycle owners need not provide basic-economic-loss, UM, or underinsured-motorist benefits. *See* Minn.Stat. § 65B.48, subd. 5; Smetak et al., *supra*, at 404. And, as this court has noted, by excluding motorcycles from the definition of motor vehicle in the no-fault act, "the legislature retained the fault based character of liability for damages caused by motorcycle use." *Pavel v. Norseman Motorcycle Club, Inc.*, 362 N.W.2d 5, 7 (Minn.App.1985). Affording motorcycle drivers the protection of the thresholds would frustrate the legislative goal of retaining a fault-based system of tort recovery for injuries caused by motorcycles.

▇ The context here does not "clearly indicate a different meaning" for the term motor vehicle other than that provided in section 65B.43, subdivision 2. *See* Minn. Stat. § 65B.43, subd. 1. Thus we conclude that a negligent motorcycle driver, whether insured or not, is not entitled to the limited protection afforded by the no-fault act tort thresholds. In *Johnson*, we reasoned that because an accident victim must meet the thresholds when suing an insured motorist, and, because the victim's UM insurer takes the place of an uninsured motorist's absent liability insurer, the victim must meet one of the tort thresholds

to recover from the UM insurer. *Johnson*, 574 N.W.2d at 471–72. Because an accident victim would not be required to meet the no-fault act tort thresholds to recover from a negligent, *insured* motorcycle driver, he or she is not required to do so to recover from his or her own UM insurer for damages caused by a negligent, *uninsured* motorcycle driver.

The district court erred in determining that the thresholds apply to Braginsky's claim against his UM insurer for an accident between his automobile and a negligent, uninsured motorcycle driver. Braginsky is entitled to the damages awarded by the jury, which the district court determined to be excluded by the thresholds. Therefore we reverse and remand for entry of judgment in favor of Braginsky, including $5,000 for pre-verdict pain, suffering, disability, and emotional distress, and $6,300 for future medical expenses. Because we determine that the no-fault act tort thresholds do not apply here, we need not reach the question as to whether future medical expenses are "noneconomic detriments," to which those thresholds apply.

## 2. Collateral sources

▇ State Farm sought a collateral-source offset. The district court determined that State Farm was not entitled to an offset because Braginsky's out-of-pocket expenses exceeded the jury award and because his health insurers asserted their subrogation rights. By notice of review, State Farm challenges this determination.

▇ Health-insurance payments are collateral sources under Minn.Stat. § 548.36, subd. 1(2) (2000). A party may file a motion for determination of collateral sources "within ten days of the date of entry of the verdict." *Id.*, subd. 2 (2000). When, as here, a special verdict is returned, "entry of judgment must be pursuant to an order of the district court." *Northwestern State Bank v. Foss*, 287 Minn. 508, 511, 177 N.W.2d 292, 294 (1970). The filing of a district court's order for

judgment pursuant to a jury's special verdict triggers the time to file a motion for determination of collateral sources. Construing "entry of the verdict" to mean filing of the district court's order for judgment is consistent with the timing mechanism for posttrial motions under Minn. R. Civ. P. 59.03. Thus, if a party chooses to file a motion for determination of collateral sources pursuant to section 548.36, it must do so within ten days after the filing of the district court's order for judgment. Any other construction would render the statutory ten-day period meaningless.[3]

Here, the district court filed an order for judgment on July 21, 1999, adopting the jury's special verdict. Twenty days later, State Farm filed a motion for determination of collateral sources. On November 2, 1999, the district court filed an order granting Braginsky judgment in the amount of $3,900, subject to a collateral-source offset. Seventeen days later, State Farm again filed a motion for determination of collateral sources. Braginsky argued that State Farm was not entitled to an offset because (1) its motion was not timely filed, (2) Braginsky's out-of-pocket expenses exceeded the jury award, and (3) Braginsky's health-care insurers had asserted subrogation rights. The district court, in ruling on the collateral-source issue, did not address the timeliness of State Farm's motions, but it denied an offset on the other grounds asserted by Braginsky.

Because State Farm's motions were not timely filed, we conclude that the district court erred in considering them. But we affirm the district court's denial of an offset.

**DECISION**

The no-fault act tort thresholds do not apply to Braginsky's UM action for non-economic damages arising out of his accident with a negligent, uninsured motorcycle driver; because State Farm's motions for determination of collateral sources were not timely filed, the district court erred in considering those motions.

**Affirmed in part, reversed in part, and remanded.**

---

3. We note that in *Wertish v. Salvhus,* the Minnesota Supreme Court overruled an opinion of this court in which we stated that the ten-day time limit in Minn.Stat. § 548.36 also applied to motions for determination of collateral sources brought pursuant to Minn. Stat. § 65B.51, which provides no time limitation. *Wertish v. Salvhus,* 558 N.W.2d 258, 258 (1997) (mem.). Because the supreme court determined that the ten-day time limit

had, in any event, been met, it declined to reach the issue of whether a motion brought pursuant to Minn.Stat. § 65B.51 was subject to the ten-day limit. *Id.* Here, State Farm's first motion for determination of collateral sources did not refer to any specific statutory provision, but its second motion and arguments on appeal were based on Minn.Stat. § 548.36. Therefore we construe its motions to have been brought pursuant to that section.